Dorrington v. Minnick.

GEORGE E. DORRINGTON ET AL., APPELLEES, V. JOHN W. MINNICK ET AL., APPELLANTS.

1. **Practice:** WAIVER OF EXCEPTION. If a defendant, after the overruling of a demurrer, answer to the merits, he thereby waives his exception to the ruling of the court on such demurrer. *Harral v. Gray,* 10 Neb., 186.

2. **Attachment:** AFFIDAVIT: NOT NECESSARY TO FULLY SET OUT FACTS CONSTITUTING THE PLAINTIFF'S CAUSE OF ACTION. In stating "the nature of the plaintiff's cause of action" in an affidavit for an attachment, it is not necessary to state the facts constituting the cause of action; a condensed statement of the general nature of the claim is a sufficient compliance with the requirements of section 199 of the code of civil procedure.

3. **Bill of Exceptions:** AFFIDAVITS. Affidavits used on a hearing in the district court must be preserved by a bill of exceptions in order to be considered by the supreme court. *Aultman v. Howe*, 10 Neb., 8.

4. **Guaranty:** WHEN ACTION ACCRUES. When an affirmative contract is made upon sufficient consideration to pay a debt of the promisee, upon the failure of the promisor to comply with his contract, the promisee may have his action at once without proof of damnification. Such a contract distinguished from a contract of indemnity.

5. **Fraud.** Facts considered and *Held* To be proof of fraudulent intent.

APPEAL from the district court of Richardson county. Tried below before DAVIDSON, J.

*Martin & Gilman*, for appellants.

*Isham Reavis* and *E. W. Thomas*, for appellees.

REESE, J.

This is an equity case, brought to this court by the defendants on an appeal from the district court of Richardson county. The uncontroverted facts of the case are as follows:

On and prior to the sixth day of March, 1882, the plaintiffs, George E. Dorrington and William E. Dorrington, were engaged in the merchandising business in Falls City, under the firm name of Dorrington Brothers, with a stock of goods claimed by them to be of the value of $6,143.61, and on which there was an indebtedness of $4,767.90.

On that day, W. E. Dorrington sold his interest in the

business to the defendant John W. Minnick for $3,071.80, said Minnick assuming the payment of one-half the indebtedness of the firm and paying to W. E. Dorrington the remainder of the purchase price, to-wit, $687. The plaintiff George E. Dorrington and the defendant Minnick then formed a copartnership under the firm name of Dorrington & Minnick, and continued the business under that name until about the twenty-second day of April, 1882, when George E. Dorrington sold his interest in the business to Minnick, Minnick assuming the payment of all the debts of the old firm of Dorrington Brothers and of the firm of Dorrington & Minnick. Minnick continued in business until about the eighth day of May, 1882, when he sold the stock of goods to the defendants Collins & Brannin for the sum of $4,000, $1,000 of which was paid in cash, and $3,000 in three notes of $1,000 each, payable to the wife of Minnick. Thereupon Collins & Brannin took possession of the store and goods. On the tenth day of May, 1882, the plaintiffs commenced this action, and in their petition alleged the foregoing facts, setting out the names of the creditors, alleging that Minnick undertook and agreed to pay all of said indebtedness, that Minnick thereby became the principal debtor, that by operation of law the plaintiffs became his surety for the payment thereof. That a part of said indebtedness had been paid by Minnick, and Dorrington & Minnick, but that $2,425.50 of said indebtedness remained unpaid, that Minnick had received the possession of said goods charged with the payment of said indebtedness, the goods to be sold by Minnick in the usual course of trade, and the proceeds to be applied as fast as received, first, to the payment of the debts of Dorrington Brothers, and secondly, to the debts of Dorrington & Minnick. That the defendants, Minnick and Collins & Brannin, on the eighth day of May, 1882, did confederate and combine together to hinder, delay, and defraud said creditors and the plaintiffs, and that the pretended sale and

transfer of the stock of goods to Collins & Brannin was fraudulent and void as against said creditors and the plaintiffs. The creditors were all made parties defendant, and the plaintiffs pray that an accounting may be had, the sale to Collins & Brannin be declared void, the amount due the creditors ascertained, judgment rendered for plaintiffs for the amount thus found due, and that all parties be restored to their original rights. At the same time the plaintiffs filed an affidavit for an order of attachment, as against Minnick, alleging as ground therefor the fraudulent disposal of his property. An order of attachment was issued and the stock of goods levied upon.

The defendants, Minnick and Collins & Brannin, appeared, and each demurred to the petition. The demurrers were overruled, and the ruling of the court on these demurrers is now assigned for error. The defendants, after the overruling of the demurrers, answered to the merits, and thereby waived this exception. *Mills v. Miller*, 2 Neb., 308. *Pottinger v. Garrison*, 3 Neb., 223. *Harral v. Gray.* 10 Neb., 188.

The defendant, Minnick, also filed his motion to discharge the attachment, alleging two reasons therefor—1st, "Because the facts stated in said plaintiff's affidavit are not sufficient toj ustify the issuance of the writ;" and 2d, "Because the statements of fact in said affidavit are not true but are wholly false." Defendant insists that the nature of the plaintiffs' claim is not sufficiently stated in the affidavit for attachment, that it is ambiguous and uncertain. Before an order of attachment can be issued the statute (civil code, § 191) requires an affidavit to be filed showing, among other things, "the nature of the plaintiff's claim." The affidavit in this case states the nature of plaintiffs' claim to be for "the sum of $2,425.58, now due and payable to the plaintiffs from the said defendant for breach of contract to pay indebtedness of the partnership firm of Dorrington Brothers, plaintiffs herein, which in-

debtedness said Minnick had assumed and promised to pay." This is a sufficient compliance with the statute.

The second reason alleged in the motion we cannot consider, for the reason that none of the proofs taken by affidavits in support of or against the motion are preserved in the record. There are copies of affidavits attached to the record, which we presume were filed by the defendant in support of his motion, but none purporting to have been filed by the plaintiff. There is no bill of exceptions showing for what purpose those affidavits were filed, nor whether any others were filed. It is well settled by this court that such affidavits can only be made a part of the record by being embodied in a bill of exceptions. *Oliver v. Sheeley*, 11 Neb., 522. *Aultman v. Howe*, 10 Neb., 10.

The defendants Collins & Brennin answered denying each and every allegation contained in the petition. The defendant Minnick answered, admitting the purchase of the goods from the plaintiffs, but denying any lien or reservation of title in their favor, or that the proceeds coming from the sale of the goods were to be applied to the payment of their indebtedness, and alleging that in the sale of the goods by the plaintiffs to him the plaintiffs fraudulently represented the property to be worth about $2,000 more than it was in fact worth. The plaintiffs knew him to be without experience or knowledge with reference to the value or marketable quality of the goods; that he bought them of the plaintiffs at the original cost, the price to be taken from the cost mark on the goods; that the plaintiffs represented the goods to be of good merchantable quality; that they were of the cash value of $6,143.60, when in fact they were not worth over $4,000, and were not of such quality as to be adapted to the market; that the defendant relied upon the representations so made by the plaintiffs, and, so relying, purchased the goods.

It will be observed that the defendant does not seek to rescind the contract, nor does he present any counter-claim

26

or set-off.    He asks no relief from the contract, and alleges no damages.

The plaintiffs, for reply to Minnick's answer, deny the facts alleged, and say the answer states no facts which constitute a defense.    The cause was tried to the court, and resulted in a general finding for the plaintiffs, and that there is due plaintiffs the sum of $2,582, that the sale from Minnick to Collins and Brannin was fraudulent, that Minnick was heavily in debt, and that Collins and Brannin had sufficient notice of the facts showing fraudulent intent on the part of Minnick to put them on inquiry, which inquiry, if reasonably pursued, would have disclosed to them such fraudulent intent, and rendered judgment in favor of the plaintiffs and against the defendant Minnick for the amount found due; that the sale be set aside, the property sold, the proceeds applied to the satisfaction of the judgment, and that the defendant Minnick be allowed to pay the amounts found due to the creditors *pro rata* in satisfaction of the judgment.

The defendant insists that the finding and decree of the district court should be reversed, and the cause dismissed as to Collins and Brannin.    As we view the case, the reasons insisted upon may be stated briefly as follows: 1st, The plaintiffs' petition and the facts proved do not show that the plaintiffs are entitled to any relief.    2d, The proofs do not show any fraudulent intent either upon the part of Minnick or Collins and Brannin.    As to the first proposition, we think the petition states a cause of action, and that if the facts alleged therein are true, the plaintiffs would be entitled to the relief prayed for and given by the trial court.    It is alleged in the petition that the contract of Minnick was a direct agreement on his part to pay the debts of the firm of Dorrington Brothers, and that he has failed to do so.    A copy of the written contract is alleged to be attached to the petition as an exhibit, and we find the same contract referred to in the evidence as introduced,

but we fail to find any such contract in the record of the case, either as an exhibit to the petition or in the evidence adduced on the trial; and as the appellant has failed to cause a copy to be embodied in the record, we conclude it is as alleged in plaintiffs' petition.

In the case of *Wilson v. Stilwell*, 9 Ohio State, 470, it is said: "The doctrine seems to be now well established by a current of decisions both in this country and in England that if there be a contract to indemnify simply, and nothing more, then damage must be shown before the party indemnified is entitled to recover; but if there be an affirmative contract to do a certain act, or to pay a certain sum or sums of money, then it is no defense to say that the plaintiff has not been damnified; and that the measure of damages in such case is the amount agreed to be paid, or the proper expense of doing the act agreed to be done." And the cases of *Post v. Jackson*, 17 Johns., 239; S. C. in error Ib., 479; *Mann v. Exford's Ex'rs*, 15 Wend., 502; *Ex parte Negus*, 7 Wend., 499; *Loosemore v. Radford*, 9 Mees. & W., 657; *Lathrop v. Atwood*, 21 Conn., 117, are cited by the court in support of its decision. Such being the law, it is clear that it was not necessary for the plaintiffs to pay the creditors before bringing this action.

As to the second proposition, we are not so free from doubt; but from a careful examination of the evidence, we think the finding and judgment of the district court should be sustained. It is true the testimony is conflicting; but in view of all the circumstances, we think the decision of the court is correct.

The testimony in the case is quite voluminous, and cannot be given in this opinion, but we think it may be fairly summarized as follows: Prior to the sale by Minnick to Collins & Brannin, Brannin was doing business in the same city as a general merchant; Collins was, for the time, out of business; Minnick was deeply involved in debt, $1,800 of which he claims was due to his wife. For about

a week prior to the sale, Collins was in the store clerking for Minnick, and another clerk was discharged. Both Collins and Brannin knew of Minnick's embarrassment, and that he would have to sell, for Minnick testifies he so informed them. But they claim they did not know the amount of his indebtedness. On the day of the sale some of Minnick's creditors were at his store demanding their money. Minnick went to Brannin's store, and there the trade was made. From there they went to the office of an attorney, and Collins and Brannin paid Minnick $1,000 by a check on the bank, and executed three notes for $1,000 each, due in six, twelve, and eighteen months, payable to Minnick's wife; whereupon Collins & Brannin were placed in possession of the store, which, during the time, had been under the charge of Minnick's clerk. It is claimed by Minnick, Collins, Brannin, and the attorney who wrote the notes that the writing of the name of Miranda Minnick as payee of the notes was not intended, or rather, that the attorney, having been some months before counseled as to the rights of Mrs. Minnick, inadvertently wrote her name in the notes, and the mistake was not discovered by either of the other parties. Collins and Brannin would hardly have executed notes amounting to $3,000 without knowing their contents either by reading or hearing them read. If their version is true, it shows a degree of carelessness hardly consistent with the idea of a *bona fide* transaction.

It is a well settled rule of law that a proof of fraudulent intent on the part of the purchaser is not necessary if it be shown that he knew of the fraudulent intent of the seller, or had notice of such facts as would have put a man of ordinary prudence upon inquiry, which, made with ordinary diligence, would have led to a knowledge of the fraudulent purpose or intent of the seller. *Jones v. Hetherington*, 45 Iowa, 682. And we think the facts then known by Collins & Brannin were sufficient to have put them upon inquiry.

Substantial justice having been done in the case the judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.