F. R. NORMAN, APPELLEE, v. DANIEL M. WAITE ET AL., APPELLANTS.

[FILED SEPTEMBER 18, 1890.]

1. **Negotiable Instruments:** TRANSFER: DEFENSES: NOTICE. Where, in an action upon a promissory note bought by an indorsee, the defendant in the answer alleged that the note was made and delivered to the payee to be held by him as security and guaranty that one W., whom the payee had agreed, for the consideration of $1,500, to take into equal partnership in his business, the same to be paid out of W.'s share of the net proceeds of the business, would remain in said partnership and faithfully perform his duty as such partner until said sum of $1,500 should be fully paid by the application of W.'s share of the net proceeds, and that said W. had faithfully performed, etc., and alleging notice of such defense to the plaintiff at the time of the purchase of said note; upon the pleadings and evidence, *held*, that the plaintiff could not recover without proof that he both bought and paid for the note before the receipt by him of notice of such defense.

2. **Conveyance.** The paper writing, purporting to be an article of agreement, set out in the opinion, *held*, not to convey title to the land described.

3. ——: WRITTEN CONTRACT: NOVATION. The existence of a written contract or instrument, duly executed between the parties to an action and delivered, does not prevent the party apparently bound thereby from pleading and proving that contemporaneously with the execution and delivery of such contract or instrument the parties had entered into a distinct oral agreement which constitutes a condition on which the performance of the written contract or agreement is to depend.

APPEAL from the district court for Hamilton county. Heard below before NORVAL, J.

*J. H. Smith*, and *Agee & Stevenson*, for appellants, cited: *Bank v. Luckow*, 35 N. W. Rep., 434; *Whiting v. Steer*, 16 Pac. Rep. [Cal.], 134; *Thudium v. Yost*, 11 Atl. Rep. [Pa.], 436; *Wolff v. Mathews*, 12 S. W. Rep. [Mo.], 211; *Collingwood v. Merchants Bank*, 15 Neb., 121; *Howard v. Stratton*, 64 Cal., 487; *Dorrington v. Minnick*, 15 Neb., 403; *Austin v. Pickler*, 4 S. E. Rep., 35; *Michels v. Olmstead*, 14 Fed. Rep., 219; *Skaaraas v. Finnegan*, 16 N. W. Rep., 456; *Westeman v. Krumweide*, 15 Id., 255; *Cullmans v. Lindsay*, 6 Atl. Rep., 332; *Callender v. Drabelle*, 35 N. W. Rep. [Ia.], 240; *Hooker v. Hammill*, 7 Neb., 235; *Williams v. Townsend*, 31 N. Y., 416; *Dakin v. Williams*, 17 Wend. [N. Y.], 447; *Fletcher v. Daugherty*, 13 Neb., 214; *Lowenstein v. Phelan*, 17 Id., 430; *Harper v. Ely*, 56 Ill., 179; *Palmer v. Palmer* 36 Mich., 487; *Pope v. Hooper*, 6 Neb., 178; *Bank v. Peck*, 8 Kan., 660; *Round v. Donnel*, 5 Id., 56; *Stanclift v. Norton*, 11 Id., 218; *Bennett v. Stevenson*, 53 N. Y., 508; *Ellwood v. Wolcott*, 4 Pac. Rep., 1056; 2 Jones, Mortgages, secs., 1181, 1186; *Dart v. Sherwood*, 7 Wis., 446; Daniel, Neg. Inst., 156, 789, 795, 835; *Story v. Lamb*, 52 Mich., 525; *Smith v. Blarcom*, 45 Id., 371; *Brooks v. Hargreaves*, 21 Id., 254; *Fralick v. Norton*, 2 Id., 130; Edwards, Bills, 141; *Lincoln Nat'l Bank v. Davis*, 25 Neb., 376; *Warner v. Whittaker*, 6 Mich., 133; *Dixon v. Hill*, 5 Id., 404; *Fox v. Bank*, 30 Kan., 446; *Thompson v. Kellogg*, 23 Mo., 285; *Tyler v. Safford*, 24 Kan., 580; *Merchants Nat'l Bank v. Hanson*, 21 N. W. Rep. [Minn.], 849.

*Hainer & Kellogg*, contra, cited: *Brown v. Wiley*, 20 Howard [U. S.], 412; *Brown v. Spofford*, 95 U. S., 474; *Dickson v. Harris*, 13 N. W. Rep. [Ia.], 335; *Linderman v. Disbrow*, 31 Wis., 465; *Tomlinson v. Nelson*, 6 N. W.

Rep., 366; *Dobbins v. Oberman*, 17 Neb., 163; *Johnson v. Way*, 27 O. St., 374; *Kelley v. Whitney*, 45 Wis., 110; *Fox v. Bank*, 1 Pac. Rep., 789; *Lowenstein v. Phelan*, 17 Neb., 429; *Long v. Allen*, 2 Fla., 403; *Carman v. Pultz*, 21 N. Y., 547; *Trask v. Vinson*, 20 Pick. [Mass.], 105; *Chapman v. Eddy*, 13 Vt., 205; *Bank v. Caldwell*, 16 Ind., 469; 1 Dan., Neg. Inst., sec. 187; *Adams v. Saule*, 33 Vt., 538.

COBB, CH. J. .

This action was brought in the Hamilton county district court by F. R. Norman, plaintiff, against Daniel M. Waite, Mira A. Woods, and Austin J. Rittenhouse, defendants, for the purpose of foreclosing a mortgage of real property made by said Mira A. Woods for the security of two promissory notes executed and delivered by the said Daniel M. Waite and Mira A. Woods to said Austin J. Rittenhouse, and by him indorsed to the plaintiff. The petition is in the usual form, with the allegation that the said notes were, before the same became due by the indorsement of the said defendant Austin J. Rittenhouse, for a valuable consideration, "indorsed, assigned, transferred, and delivered to the plaintiff, who is now the lawful owner and holder thereof; that no part of the principal or interest of said notes has been collected or paid, although the $1,000 note has long since become due and payable;" also, that the said Mira A. Woods did not keep the said premises insured as required by the covenants of said mortgage, but wholly failed to do so; that the said Mira A. Woods also wholly failed to pay the taxes due on said premises for the year 1885, amounting to $9.15, as required by the covenants of said mortgage, but made default therein, and on October 29, 1886, the plaintiff, to protect his security and to . prevent a sale of said premises for said taxes, paid the same, amounting, with interest, to the sum of $9.15, no part of which has been paid to the plaintiff.

The defendant Mira A. Woods by her answer admitted that she executed and delivered the notes and mortgage in plaintiff's petition described, and that said mortgage was recorded as therein alleged. She further alleged that her co-defendant, Daniel M. Waite, is her son and had just prior to the execution and delivery of said notes and mortgage been admitted to practice as an attorney and counselor at law of said court; that at said time Austin J. Ritten_house, the payee of said notes, had for more than seven years been an attorney and counselor at law of said court and for two years then last past had been the tutor of said Daniel M. Waite; that prior to the execution and delivery of said notes and mortgage said Austin J. Rittenhouse proposed to her, the said defendant and her said son, to take him, the said Daniel M. Waite, into a copartnership with him, the said Austin J. Rittenhouse, in the business of the practice of law and buying and selling real estate on commission, making collections, loaning money, and doing such other business as said Rittenhouse had theretofore been doing at Aurora, Nebraska, as an equal partner, provided said Waite would pay him, the said Rittenhouse, the sum of $1,500 for a half interest in said business and in the office furniture and library which he, the said Rittenhouse, then owned; that said Rittenhouse, in order to induce said defendant to execute and deliver said notes and mortgage, fraudulently and falsely represented to her that the firm of Rittenhouse & Chambers, in which he was then a copartner with one Walter Chambers in the business aforesaid, was doing a business which paid them $3,000 over and above all expenses, and that said Waite's share of the net proceeds of the business of said Rittenhouse & Waite, in case such partnership should be formed, would in one year be more than sufficient to pay him, the said Rittenhouse, the said sum of $1,500, and that at the time said Rittenhouse made such representations he well knew the same to be false, and well knew that the net

20

proceeds of the business of said firm of Rittenhouse & Chambers did not exceed the sum of $1,500, and said representations were made for the purpose of inducing said defendant to execute and deliver said notes and mortgage.

She further alleged that it was expressly agreed between her and the said Rittenhouse, which said agreeement was by parol, that in case he and said Waite should enter into said copartnership, then upon the execution and delivery of said notes and mortgage ·by defendant the same should be held by said Rittenhouse as security that the said Waite would remain in copartnership with him, the said Rittenhouse, and perform his part of the duties of said copartnership and permit his share of the net proceeds of the business thereof to be applied to the payment of said sum of $1,500, to be paid to the said Rittenhouse until the same should be fully paid, and that it was expressly agreed that said answering defendant should not be called upon to pay any portion of said sum of $1,500, but that the same should be paid out of said Waite's share of the proceeds of the business of said copartnership, and that said Rittenhouse should hold said notes and mortgage for security merely, that said Waite would not abandon said copartnership and that said notes and mortgage would not be transferred to any other person or persons. And defendant alleged that she relied upon the representations of the said Rittenhouse, and, believed them to be true when in fact they were false, and, being desirous of assisting her said son, she made, executed, and delivered the notes and mortgage aforesaid as a guaranty that said Waite would not abandon said copartnership without cause, before said sum of $1,500 should be paid to said Rittenhouse, and that said Waite would perform, to the best of his ability, his duties as a member of said copartnership, and would permit his share of the net proceeds·of the business thereof to be applied to the payment of said sum to said Rittenhouse until the same should be paid, and for no other pur-

pose whatever. She further alleged that her said son and Rittenhouse entered into said copartnership on or about the 1st day of April, 1886, and that her said son has duly performed each and every agreement on his part and each and every duty as a member of said copartnership, but that on or about the 15th day of June, 1886, the said Rittenhouse abandoned the business of said copartnership and left the city of Aurora, Nebraska, where said business was to be carried on, went to the city of McCook and formed a copartnership for the practice of law with one J. S. LeHew and has wholly abandoned and neglected the business of the firm of Rittenhouse & Waite, and fraudulently, and for the express purpose of cheating and defrauding defendant, transferred said notes and mortgage to said plaintiff, contrary to his said ‡agreement with defendant.

She further alleged that by the terms of said notes and mortgage the same became due on the first day of May, 1886, and had long been due when transferred to said plaintiff, and that at the time the said plaintiff purchased the same he well knew that the defendant had a good and valid defense to the same and that the same had been obtained by fraud, and defendant denied that said plaintiff received said notes and mortgage in good faith before maturity and for value, and denied every allegation contained in said petition and not in said answer admitted.

The defendant Daniel M. Waite, by his separate answer, admitted the execution and delivery of the notes sued on in the said case, but denied that the plaintiff received the same before due, and alleged that the said plaintiff was not an innocent holder of said notes, but that he took the same with information and knowledge that the same had been obtained through fraud, and with information and knowledge of the defense of him, the said defendant, hereinafter set out, to the payment of said notes; that on the 19th day of February, 1886, said defendant entered into an agree-

ment with the payee of said notes to enter into a copartnership with said Rittenhouse, in the practice of law, and the doing of a general loan, collecting, insurance, and real estate business; that just prior to the time of the execution and delivery of said notes he, the said defendant, had been admitted to practice at the bar of said district court as an attorney and counselor at law; that the payee of said notes, Austin J. Rittenhouse, in order to induce said defendant to enter into a copartnership with him, represented and stated to him, said defendant, that the firm of Rittenhouse & Chambers, a copartnership composed of said Austin J. Rittenhouse and one Walter Chambers, then doing business at Aurora, Nebraska, in the practice of law, and buying and selling real estate on commission, and as loan, insurance, and collecting agents, had, during the year then last past, made in their said business, over and above all expenses, $3,000, when in truth and in fact, as said Rittenhouse well knew, said firm had not, during said year, made to exceed $1,500 over and above all expenses; that said Rittenhouse proposed to dissolve the copartnership existing between him and said Chambers, and to buy the interest of said Chambers in the business of said firm, and to then take defendant into copartnership with him as an equal partner, defendant to have one-half interest in all office furniture and library then in the office, or belonging to the said firm of Rittenhouse & Chambers, provided this defendant would pay him, the said Rittenhouse, out of his, this defendant's, share of the net proceeds of the firm, which was to be known as the firm of Rittenhouse & Waite, as the same should be received, the sum of $1,500, with interest at ten per cent until paid, and in order to induce the defendant to enter into such copartnership and agree to pay him said sum, made the fraudulent and false representations aforesaid. This defendant, relying on said representations and believing them to be true, was induced to enter into a copartnership with said Rittenhouse for the practice

Norman v. Waite.

of law, and in doing a general loan, collection, and insurance business, and in buying and selling real estate on commission, said business to be carried on in Aurora, Hamilton county, Nebraska, and to begin on the 1st day of April, 1886; and it was expressly agreed and understood that said copartnership was to continue until said sum of $1,500, and the interest thereon, should be paid out of this defendant's share of the net proceeds of the business of said firm, and that the said notes should be held by said Rittenhouse merely as a guaranty that said defendant would not abandon said copartnership without cause before said sum of $1,500 should be paid as aforesaid, and that defendant should perform his part of said agreement.

And defendant further alleged that it was agreed and understood that each of said parties should devote all his time, energy, skill, and ability to the prosecution of said business; that said Rittenhouse and defendant, in pursuance of said agreement, did enter into said copartnership on the 1st day of April, 1886, and that defendant has ever since duly performed on his part every condition and agreement in said contract, and has fully complied with all of his agreements in said contract, but that said Rittenhouse has wholly neglected and refused to comply with said agreement on his part, and on or about the 15th day of June, 1886, wholly abandoned said copartnership, and removed from said city of Aurora and formed a copartnership with one J. S. Le Hew, at McCook, Nebraska, for the practice of law at said place, which said place is more than one hundred and fifty miles from said city of Aurora, and has neglected and refused to perform any service as a member of said firm of Rittenhouse & Waite, and has wholly neglected the business of said firm, and thereby caused persons who had employed said firm of Rittenhouse & Waite to refuse to continue said employment, and to employ other counsel in such cases. And defendant alleged that he had received no consideration for

said notes except the half interest in the library and office furniture aforesaid, which did not exceed in value the sum of $350. And defendant alleged that the plaintiff had information of the fact and well knew before he purchased said notes what said notes were given for, and that said Rittenhouse had abandoned his contract with defendant, and that the consideration therefor had failed, and before said plaintiff had paid anything for said notes defendant notified him of the facts hereinbefore stated, and warned him, the said plaintiff, not to buy said notes of said Rittenhouse. And defendant further alleged that it was agreed that his share of the net proceeds of the business of said firm of Rittenhouse & Waite should be applied to the payment of said $1,500, and that said Rittenhouse had received large sums of money, the exact amount of which is to defendant unknown, which belonged to said firm, and in excess of the expenses of said firm, which should be applied to the payment of any amount which may be found due on account of defendant's purchase of an interest in said library and furniture as aforesaid, and that there has never been any settlement of the accounts or business of said copartnership; with prayer that said Austin J. Rittenhouse be made a party to said action, that an accounting be had touching all of said copartnership business, and that any money received by said Rittenhouse belonging to the firm of Rittenhouse & Waite, in excess of the amount to which said Rittenhouse is entitled, as his share of the net proceeds of said business, may be applied to the payment of any amount due on account of his interest received by defendant in said library and office furniture, and for general relief.

The replies of the plaintiff to the separate answers of the defendants are, substantially, general denials.

There was a trial to the court, with general findings for the plaintiff as to the execution and delivery by the defendant Mira A. Woods to Austin J. Rittenhouse of the mort-

gage deed set forth in the petition, the making and delivery by the defendants to the said Rittenhouse of the notes described in the petition; that the notes were due; that there was then due thereon $1,764.50 with ten per cent interest from date; that said Austin J. Rittenhouse sold, transferred, and assigned said mortgage and notes to the plaintiff, who was then the holder and owner thereof; also, that the plaintiff, in order to protect his security, paid the taxes levied and due on the mortgaged premises, amounting to $9.15; that no part thereof had been repaid and that the plaintiff was entitled to a foreclosure of said mortgage as prayed for. There was the usual judgment of foreclosure and sale, and the cause appealed to this court by the defendants Mira A. Woods and Daniel M. Waite.

There are two principal questions presented by the record :

1. Is the plaintiff such an indorsee, owner, and holder of the notes secured by the mortgage and declared on in the petition as entitles him to recover the contents thereof from the makers, although they have a defense thereto as against the payee? and,

2. Under the pleadings and upon the evidence, were the action between the payee and the makers of the notes, could the former recover?

Appellants, in the brief of counsel, present two grounds upon both of which they claim that the plaintiff is not an innocent holder of the notes, so as to cut off a defense thereto existing against the payee.

1. That the notes and mortgage were due when the plaintiff obtained them. This proposition is claimed to be based upon a clause of the mortgage which reads as follows : " It is further agreed that if said mortgagor shall fail to pay such taxes or procure such insurance, the said mortagee may pay such taxes and procure such insurance, and the sum so advanced, with interest at ten per cent, shall be repaid by the said mortgagor, and this mortgage shall stand as security

for the same; that a failure to pay any of said money, either principal or interest, when the same becomes due, or a failure to comply with any of the foregoing agreements, shall cause the whole sum of money herein secured to become due and collectible at once."

It appears, both from the petition and bill of exceptions, that the defendant, Mira A. Woods failed to pay the taxes of 1885, which became delinquent May 1, 1886, upon the mortgaged property. Upon these premises counsel for appellants contend that the notes were due and dishonored at the time of their transfer by Rittenhouse to the plaintiff, so as to charge the latter with notice of all infirmities and defenses. I am inclined to differ with counsel upon this point, especially in its application to the evidence in the case at bar, but will refrain from a discussion of the authorities cited to sustain it, in view of the second ground, which is, that the plaintiff received notice of defendant's defense to the notes before he parted with the consideration which he paid therefor. It appears from the bill of exceptions that the consideration which the plaintiff paid for the said notes and mortgage consisted of a tract of land in Hamilton county, which plaintiff held and was in possession of by virtue of two certain contracts of sale executed and issued by the Union Pacific Railway Company; that the contract between plaintiff and Rittenhouse was made on the 18th day of September, 1886; that the said contracts were then in the possession of plaintiff's father, in the state of Ohio, and were not delivered to the said Rittenhouse until about ten days thereafter. But on the day of the trade plaintiff executed to Mrs. Rittenhouse, wife of Austin J. Rittenhouse, doubtless at the request of said Austin J. Rittenhouse, and as a part of the transaction between Rittenhouse and Norman for the transfer of the said notes and mortgage, an instrument in writing, which was put in evidence upon the trial and which I here copy:

"ARTICLES OF AGREEMENT.

" I, F. R. Norman, party of the first part, have this day assigned and transferred all my right, title, and interest in and to the west one-half of the northwest one-fourth of section No. 11, township No. 9 N., of range No. 6 west, in Hamilton county, Nebraska, to Louisa J. Rittenhouse party of the second part for and in consideration of the sum of fifteen hundred dollars, the receipt whereof is hereby acknowledged, and I do hereby sell, assign, and transfer to her all my right, title, and interest in the two Union Pacific Railway Company's contracts of sale Nos. 40140 and 40141, which I now own and hold for said land, and I represent that I am the owner of said contracts by assignment from J. H. Stokesbury, and that I will deliver said Louisa J. Rittenhouse said contracts, numbered as aforesaid, with the assignments of said J. H. Stokesbury to said contracts thereon, written in due form ; that I will deliver said contracts within ten days from this date. I, Mary E. Norman, wife of F. R. Norman, do hereby relinquish all my right of dower in the above described land." Signed by F. R. Norman, and Mary E. Norman, witnessed and acknowledged before a notary public.

The acknowledgment is dated the 18th day of September, 1886, which is the only date the paper contains.

It appears from the evidence that the transfer of the notes by Rittenhouse to Norman, and the execution and delivery of the above paper by Norman and wife to Rittenhouse, occurred on Saturday, after or shortly before the close of business hours, and there were circumstances of haste and precipitation connected with the transaction, as detailed by the plaintiff when on the stand, and by Rittenhouse in his deposition, which were calculated to have put the plaintiff on his guard in trading for the notes. But there is no direct evidence of the plaintiff having had actual notice of defendant's defense to the notes and mort-

gage until the Monday following, when the defendants, Mrs. Woods and Waite, together with their counsel, went to the office of the plaintiff and informed him of their defense and requested him to retain matters in *statu quo.* The Union Pacific railroad certificates were then still in Ohio, and, so far as Rittenhouse was concerned, still under the control of the plaintiff. No legal title to the land ever having been in the plaintiff, of course none passed from him to Mrs. Louisa J. Rittenhouse by virtue of the paper above copied, and whatever equities passed to her were burdened with the superior equity of Mrs. Woods, if her theory of the transaction between her and Rittenhouse is sustained by the evidence. The plaintiff, a business man, knew that he could not convey title to the land, at all events he made no attempt to do so; but entered into an agreement to deliver the certificates with the assignment of the original holder thereon and thus enable Mrs. Rittenhouse or her husband to obtain title to the land from the railroad company where it still remained. It is not deemed of importance that the writing contains some words of grant. It is headed "Articles of Agreement" and even had the title to the land been in the plaintiff, which it was not, this paper would occupy no higher grade than that of an agreement to convey. (See *Jackson v. Myers,* 3 Johnson's R., 387.) Granted that the plaintiff was an innocent purchaser of the notes and mortgage so far as such purchase had proceeded up to Monday, the 20th day of September, when he received the notice above stated, he had then not parted with the consideration, which was the delivery of the Union Pacific railroad certificates "with the assignments of J. H. Stokesbury to said contracts thereon." It has been often held in cases of the transfer by indorsement of commercial paper to which there was a defense while in the hands of the payee, but not as against a *bona fide* holder for value without notice, that in order to make a reply to the defense to

such note setting up the *bona fide* purchase of such note by the plaintiff and its indorsement to him for value before maturity and without notice, such plaintiff must allege and prove that he not only bought, but also paid for, the note before notice of fraud or other defense. (See Daniel on Negotiable Instruments, sec. 789*a*, and case there cited; see also, 35 cases cited in note 2, Devlin on Deeds, sec. 736.)

. The plaintiff had bought, but had not paid for the notes and mortgage, when he received actual notice from the makers, of the facts which they then and now claim constitute a defense thereto.   By reference to the several answers of the defendants, Mrs. Woods and Waite, as set out in the statement, it will be seen that the defense to the notes and mortgage consisted in the allegation that, contemporaneous with the execution and delivery of the notes and mortgage, and as the true and only consideration for the execution and giving thereof, the said Waite and Rittenhouse entered into a copartnership for the practice of law and collecting agency, etc., and that as a consideration and compensation to Rittenhouse, who was already established in said business, Waite, who had just finished his course of study in the office of Rittenhouse, and had then lately been admitted to practice as an attorney at law, was to pay to Rittenhouse out of his share of the net earnings of the firm, as fast as the same should be realized, the sum of fifteen hundred dollars, and that the said notes were executed by Waite and his mother, Mrs. Woods, and delivered to Rittenhouse, and the mortgage executed by the latter upon her house and lot to secure said notes, the whole to be a guaranty or security to Rittenhouse for the faithful performance by Waite of his part of said contract, to the extent that he would continue and act as a member of said partnership until his half of the net proceeds of the earnings thereof should be sufficient to pay the said sum of fifteen hundred dollars, and pay the same to said Rittenhouse,

or allow him to draw and appropriate the same. Also, that shortly after the formation of said copartnership and the giving of said notes and mortgage, the said Rittenhouse abandoned the said partnership and business, left the city of Aurora, and county of Hamilton, where the same had been and was to be carried on, entered into partnership with another party, and commenced and thereafter practiced law and carried on business in another and distant part of the state. In support of the position that the above facts constitute a defense to the action, or would, had the same been instituted by Rittenhouse, appellants cite the cases of: *Austin v. Pickler* (a North Carolina case), 4 So. Rep., 35; *Michels v. Olmstead*, 14 Fed. Rep., 219; *Bank v. Luckow*, 3 N. W. Rep., 434; *Skaaraas v. Finnegan*, 16 Id., 456; *Westeman v. Krumweide*, 15 Id., 255; *Cullmans v. Lindsay*, 6 Atl. Rep., 332; *Dorrington v. Minnick*, 15 Neb., 403; *Hooker v. Hammill*, 7 Id., 235. These cases are mostly in point and tend to establish the proposition as above stated. They are not met by citations of cases, or authorities to the contrary. I cite the following cases to the same point: *Thudium v. Yost*, 11 Atl. Rep., 436; *Wood v. Matthews*, 73 Mo., 477; *Howard v. Stratton*, 64 Cal., 487; *Whiting v. Steer*, 16 Reporter, 134.

I do not remember to have seen the law on this subject so clearly stated elsewhere as by Judge Krekel, United States district judge of the western district of Missouri, in his charge to the jury in the case of *Michels v. Olmstead, supra*, in the following words: "When parties, without any *fraud* or *mistake*, have deliberately put their engagements in writing, the law declares the writing to be not only the *best*, but the *only evidence* of the agreement; but this does not prevent parties to a written agreement from proving that, either contemporaneously or as a preliminary measure, they had entered into a distinct oral agreement on some collateral matter, or an oral agreement which constitutes a condition on which the performance of the written agreement is to depend."

The making of the oral agreement substantially as set out in the answers was sworn to by Mrs. Woods and Waite as witnesses on the trial, and although it is denied by Rittenhouse in his deposition, it cannot be denied or doubted that the weight of evidence is very largely in favor of the truth of the answers.   But even if there had been no oral agreement as set up in the answer, and testified to by the litigating defendants, could Mr. Rittenhouse or his indorsee, with notice, have enforced the collection of these notes either in a court of law or equity?   I think not. Viewed in the light most favorable to the plaintiff in that event, the consideration for the notes was the taking by Rittenhouse, a lawyer of many years' practice, of Waite, a young man just admitted to practice, into partnership with him in the practice of law and its kindred pursuits.   This clearly implied the continuation of such relationship and its advantages to Waite for a series of years, unless sooner terminated by the death of one of the partners, or the forfeiture by Waite of his right to such relationship by misconduct; and it appears from the whole case, and is undisputed, that within less than three months after entering into such relationship, and without any disclosed cause or reason, Mr. Rittenhouse abandoned the city, county, and judicial district in which the business of such partnership was, and was to be carried on, and withdrawing himself to a distant part of the state, entered into business relations inconsistent with the further relation of partnership with Waite, which relationship, as is contended, constituted the consideration for which the notes were given. This is not met by the possible suggestion that it was to Waite's advantage that the entire business was abandoned to him.   The purchase or sale of the entire business and practice of Rittenhouse was not contemplated by either party when the notes were given, and the withdrawal of Rittenhouse was as much a violation of the contract of partnership as would have been the forcible exclusion of

Waite therefrom.   In either case the result would be a
failure of the consideration for the notes, if, as contended
by plaintiff, such consideration was the taking of Waite
into partnership by Rittenhouse.

I therefore reach the conclusion that the findings and
judgment of the district court are neither of them sus-
tained by the case or the law applicable thereto.

The judgment and decree of the district court is

REVERSED, AND CAUSE DISMISSED.

MAXWELL, J., concurs.

NORVAL, J., having tried the case in the court below,
did not sit.