# FIRST NAT. BANK OF LOVELOCK *v.* ROGERS

### No. 2766

September 6, 1927.                           258 P. 1024.

1. LANDLORD AND TENANT—LESSEE'S ASSIGNMENT OF SUBLESSEE'S FUTURE RENT HELD NOT BINDING ON LATTER, EVEN THOUGH ASSENTED TO BY HIM, WHERE LESSEE FORFEITED LEASE.

Sublessee's contract with lessee as to rental or "purchase" of pasture and payment of money therefor *held* not absolute, but conditional upon lessee's furnishing pasture,·hence latter's forfeiture of lease made his previous assignment to plaintiff of sublessee's future rent money not binding upon sublessee, although sublessee had accepted lessee's order to pay future rent to plaintiff.

2. LANDLORD AND TENANT—ASSIGNEE OF SUBLESSEE'S RENT PAYMENTS HAS NO GREATER RIGHT TO RENT THAN LESSEE, HENCE COULD NOT COLLECT RENTS ACCRUING AFTER LEASE FORFEITURE.

Where lease provided that lessee might "sell" pasture rights, lessee's assignment of future rent money from sublessee or "purchaser" of pasture rights *held* not to entitle assignee to collect from such sublessee rentals accruing after lessee's forfeiture of lease, assignee's right being no greater than his assignor's and latter having no such right.

### C. J.-CYC. REFERENCES

ASSIGNMENTS—5 C. J. sec. 150, p. 963, n. 20, 23, 24; sec. 185, p. 985, n. 99 (new).

LANDLORD AND TENANT—36 C. J. sec. 1247, p. 380, n. 62 (new).

APPEAL from Second Judicial District Court, Washoe County; *Frank T. Dunn,* Judge.

Action by the First National Bank of Lovelock against the H. Moffatt Company, Elizabeth A. Rogers and another being substituted as defendants. Judgment for plaintiff, and defendants appeal. **Reversed.** (DUCKER, J., dissenting.)

*Booth B. Goodman,* for Appellants:

Assignee cannot be in better position than assignor. 2 A. & E. Enc. 1079. After legal reentry of lessors, all rights of sublessee and his assignee were terminated. Lessors are the only persons having right to profits. Assignments are of money not earned, but anticipated, not of contract itself. Bank took with full knowledge of limited rights of assignor, and defendants' right to reenter. Mortgagee of leasehold takes subject to all

conditions of lease. Upon termination, mortgage so far as it affects reversion, falls with it. If lessee has sublet, forfeiture terminates estate of sublessee. 24 Cyc. 987, 1359.

*Thatcher & Woodburn,* for Respondents:

Appellants urge agreement with Moffatt as to pasture was in nature of lease of it, or in effect sublease from Reservation Company, and that they are entitled to proceeds. This is not so. Lease is extremely broad, giving lessee possession with right to raise crops and to sell or encumber large amount of property, crops, stock, etc. Reservation Company sold pasture prior to any forfeiture, receiving part payment, balance payable monthly; benefits were assigned to bank, agreeably to Moffatt. Paragraph 19 of this contract has been before various courts and upheld. In Rogers v. Perez, Judge Farrington held Reservation Company had right to sell live stock, except such as lessee was required to keep on ranch. His decision was upheld by Circuit Court of Appeals of Ninth Circuit. Rogers v. Perez, 12 Fed. (2d ed.) 923.

That assignment was not of contract, but of money not yet earned, strengthened claim of plaintiff. It shows absolute sale. It was purchase to become due that was assigned to bank.

Plaintiff's rights might have terminated with reentry if this were sublease, but it was not. It was absolute sale of pasture. Suppose cattle had been sold and promissory note taken and then assigned. Would not assignee then be entitled to recover? Would defendants have any interest in it whatsoever?

## OPINION

By the Court, SANDERS, C. J.:

The First National Bank of Lovelock brought suit against H. Moffatt Company to recover the sum of $5,501.76. Moffatt Company filed an answer admitting an indebtedness to some one in the amount mentioned,

and alleged that Elizabeth A. Rogers and Millie H. Jones also asserted claim to the money, and asked leave to pay the money into court and that an order be entered substituting Mrs. Rogers and Mrs. Jones in its stead. Simultaneously with the filing of said answer Mrs. Rogers and Mrs. Jones filed a petition in intervention, claiming that the money was owing them by Moffatt Company. Thereafter an order was made directing Moffatt Company to pay the money into court and that Mrs. Rogers and Mrs. Jones be substituted as defendants in the place of H. Moffatt Company.

Upon the trial judgment was entered in favor of the plaintiff. From such judgment and an order denying a motion for a new trial, the defendants appealed. The parties will be referred to as plaintiff and defendants, as in the trial court.

The facts which give rise to the questions of law in respect to the judgment are as follows: ·

On July 1, 1923, the defendants leased their ranches in Pershing County, comprising about 14,962 acres, together with the live stock, grain, products, and equipment thereon, to one Walter W. Akers for a term of three years and five months from July 1, 1923, to and including November 30, 1926, at a stated rent of $110,000, payable in advance in equal monthly payments of $2,750 each. Upon the execution and delivery of the lease Akers formed a corporation called the Reservation Land & Cattle Company to take over and operate the lease. Upon the organization of the corporation Akers was made its president and manager, and the lease, with the approval and consent of the lessors, was assigned to the Reservation Company. The lease contains this provision:

"Except as in this paragraph otherwise agreed, the lessee may, in his discretion, and in his own name, sell and incumber or sell or incumber all hay, grain, and other crops and products now upon said ranch or now growing thereon or hereafter and during said term harvested thereon, and all marketable cattle and live stock now on said ranch or now on range or belonging

to said ranch or hereafter and during the said term raised thereon. * * * The lessee shall have the right, in his discretion, to buy and sell pasture and to purchase additional live stock."

On the 31st day of March, 1924, the Reservation Company, through Akers, its president and manager, while in possession of the leased premises, made to H. Moffatt Company the following proposition, in writing:

"Gentlemen: We hereby acknowledge receipt of the sum of $2,000, being advance payment on account of pasture to be furnished you by the undersigned, and we do hereby covenant and agree with you as follows:

"(1) You are to have the exclusive right to not less than 1,350 acres of alfalfa, field pasture on the Reservation ranch in Lovelock Valley, during the season of 1924, for your beef cattle, excepting the alfalfa in sections 10 and 15 from which we reserve the first cutting, maturing before the grain now thereon is harvested, after which you are to have the additional stubble and new alfalfa pasturage approximating 175 acres. * * *

"(3) We agree to furnish, without additional charge, ample, suitable water for all cattle which you put on pasture, either in ditches or in corrals convenient to the pasture, as you may in your discretion elect and direct. * * *

"(5) We agree to keep all fences in a good state of repair to prevent the escape of cattle.

"(6) You are to pay us $2 per head, per month, for each head of live stock pastured, excepting yearlings, and the price for yearlings is and will be $1.50 per head. We understand that you estimate that you will have about 70 head of yearlings to pasture.

"(7) All pasture shall be paid for monthly. The sum of $2,000, already received by us, and herein acknowledged, shall be applied to payment, and no payment shall be due until the pasture paid for in advance has been consumed.

"You are not to place cattle in any field until notified to do so by me, but you are to have the privilege of

removing cattle from any field when, in your opinion, pasturage is insufficient to fatten cattle, and shall in any event remove the cattle before the pasturage is injured by too close pasturing."

The Moffatt Company signed the following memorandum on the bottom of the paper: "Approved and accepted."

On May 3, 1924, the Reservation Company made the following order on the Moffatt Company:

"Please pay to the order of First National Bank of Lovelock all moneys due or to become due under and by virtue of the within contract and agreement as in said agreement provided until the full sum of $3,500, with interest thereon at the rate of 8 per cent per annum from the date hereof, shall have been paid."

The Moffatt Company signed the following memorandum on the bottom of the paper: "Accepted May 5, 1924."

On May 30, 1924, the Reservation Company was in default in the payment of the rentals as provided in the contract of lease, and the lessors and Akers, on said date, met in a lawyer's office in San Francisco, and the lessors then and there made demand upon Akers to pay the rentals and comply with the terms and conditions of the lease or to surrender the lease. Akers frankly admitted that neither he nor the Reservation Company could comply with the terms and conditions of the lease. Notwithstanding this admission, the Reservation Company, on May 31, 1924, made a further and additional order on the Moffatt Company, as follows:

"H. Moffatt Company, San Francisco, Cal.—After you have paid the full sum of $3,500, with interest thereon at the rate of 8 per cent per annum from May 3, 1924, to the First National Bank of Lovelock, Nev., in accordance with assignment executed by the Reservation Land & Cattle Company on May 3, 1924, please pay to said First National Bank of Lovelock, Nev., all moneys due or to become due under and by virtue of the within contract and agreement as in said agreement provided until

the full sum of $4,500, with interest at the rate of 8 per cent per annum from the date hereof, shall have been paid."

The Moffatt Company signed the following memorandum on the bottom of the paper: "Accepted May 31, 1924."

On June 1, 1924, a representative of the lessors took possession of the leased premises and property.

On June 18, 1924, by an instrument in writing duly executed by the parties and the Reservation Company, the lease contract was canceled, annulled, and terminated.

The evidence shows that the lessors had no knowledge of the contract between the Reservation Company and the Moffatt Company in respect to pasture nor of the orders and acceptances above set out. The evidence tends to show that a controversy arose between the Moffatt Company and the defendants as to the Moffatt Company's right to continue to pasture the lands specified in the contract after the cancellation of the lease. This controversy was settled by an injunction suit brought by the Moffatt Company against the defendants. The proof shows that the defendants performed the services required under the contract, and that the Moffatt Company continued to use the pasture upon the terms and conditions provided in said contract until October 1, 1924, the end of the pasture season of 1924. The Moffatt Company on said date became and was indebted for pasture in the sum of $5,501.76. On October 25, 1924, the First National Bank of Lovelock commenced this action to recover of the Moffatt Company said amount of $5,501.76, basing its claim thereto upon the allegations of the complaint that on March 31, 1924, the Moffatt Company purchased of the Reservation Company an exclusive right to not less than 1,350 acres of pasture on the "Reservation Ranch" to be used during the season of 1924, subject to the reservations, conditions, and payments which appear from the written agreement between said parties, attached to and

made a part of the complaint by proper reference, and that for the pasturing and feeding of the Moffatt cattle on the land described in the contract there became due from the Moffatt Company to the Reservation Company and its assignee, the plaintiff, the sum of $5,501.76. The complaint sets out as a part thereof the orders on and their acceptances by the Moffatt Company.

The trial court decided and found the allegations of the complaint to be true and rendered judgment in favor of the plaintiff for said amount. From the judgment so rendered the defendants appeal, claiming that the indebtedness accrued for pasture subsequent to the forfeiture of the lease should have been adjudged to be paid to the defendants, and not to the plaintiff.

1. The question presented for determination involves the proper construction and interpretation of the documents above set forth. When we examine the contract between the Reservation Company and the Moffatt Company as a whole, it is perfectly manifest that the payments to be made by the Moffatt Company to the Reservation Company were only to be made as the Moffatt Company became indebted for the pasture furnished, and, when the Moffatt Company agreed to make the payments, it was upon the condition of the Reservation Company fulfilling its contract to furnish pasture in accordance with the terms and conditions of its agreement. In other words, reading the whole contract with all its provisions together, the Moffatt Company's contract to pay the money to become due for the pasture was conditional, and not absolute. The Reservation Company's ability to fulfill its agreement was dependent upon its keeping alive its lease, as well as upon the performance of its agreement to furnish pasture for the Moffatt cattle for the season of 1924, to supply them with water, and to perform the services required in connection with the use of the pasture. The Reservation Company disabled itself from fulfilling its agreement when it forfeited its lease and surrendered to the owners the possession of the land under pasture by the Moffatt

Company on June 1, 1924. Consequently the balance of the money to become due for pasture furnished subsequent to that date could not legally be recovered in an action by the Reservation Company against the Moffatt Company upon the termination of the contract.

2. It is contended on the part of the plaintiff that, under the provisions of the lease contract, the Reservation Company had the right in its discretion to buy and sell pasture during the term of the lease, and, the right to the use of the pasture for the season of 1924 having been purchased by the Moffatt Company, the money to become due therefor was an assignable chose in action which entitled the plaintiff, as assignee, to the money to become due upon the fulfillment of the contract by the Moffatt Company. We are of opinion that the acceptance of the order of May 31, 1924, for the money to become due conferred no greater or different claim in favor of the plaintiff than was originally possessed by assignor; and, in as much as nothing was due the assignor upon the fulfillment of the contract by the Moffatt Company, there was nothing due the plaintiff under the order of May 31, 1924. Martyn v. Western Pac. Ry. Co., 21 Cal. App. 589, 132 P. 608. Conceding that the money to become due for the pasture was an assignable chose in action, it is a general rule that an assignee cannot maintain an action upon an assigned chose in action where his assignor did not have such right. 3 Cal. Jur. sec. 41, p. 292; 5 C. J. sec. 2, p. 1012. Conformably to this rule we hold that the court below erred in rendering any judgment in favor of the plaintiff. The judgment is therefore reversed.

COLEMAN, J.: I concur.

DUCKER, J., dissenting:

In my opinion, there was an absolute sale of the pasture by the Reservation Company to the Moffatt Company, which the lessee had the power to make under the express terms of the lease.