GEORGE G. CRONKLETON, RECEIVER, APPELLEE, V. HASTINGS THEATRE & REALTY CORPORATION, APPELLANT: RALPH E. BRYANT ET AL., APPELLEES.

278 N. W. 144

FILED FEBRUARY 25, 1938. No. 30277.

*Loren H. Laughlin,* for appellant.

*Tibbets, Canaday & Hewitt* and *Stiner, Boslaugh & Stiner,* contra.

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ., and ELDRED, District Judge.

DAY, J.

This is a suit to foreclose a second mortgage on real estate located in Hastings. The trial court found for the receiver of the bank, and entered a decree from which the "Hastings Theatre & Realty Corporation" appeals. In the beginning of this transaction Bryant owned some vacant property in the heart of the city which he sold to the company. This second mortgage was given subject to a first mortgage as a part of the purchase price. The company gave the first mortgage to secure money to build a combination hotel and theater building. The hotel portion was rented to Bryant at a stipulated rental. Bryant held notes for $70,000 secured by this second mortgage as the purchase price of his real estate. He was lessee of a part of the building erected thereon, and was indebted to the company for a stipulated amount of rent. On January 4, 1929, he assigned these notes to the then president of the First National Bank of Hastings in trust to sell certain bonds or notes against them to third persons to pay the indebtedness due the bank from him. The conflicting claim between the receiver of the said bank and the successor trustee to the former president of the bank as to priorities under the trust agreement, and the second mortgage, are not in controversy in this suit, because they united here against a common opponent. Bryant did not pay his rent in full in 1932, and paid nothing after January 1, 1933. He continued to occupy the building with a hotel, and at the time of the trial was owing under his lease the sum of approximately $40,000. The claim before this court is made by the company that the accrued rental should be set off against the company's indebtedness to Bryant, as represented by the notes secured by this second mortgage.

The receiver of the bank filed his petition in January, 1936, on the theory that the nonpayment of interest on the notes accelerated the payment of all, although the first of

a series of ten notes was not due until September 1, 1936.

It is the contention of the appellant company that the sale by Bryant of the real estate and the lease to him by the company constituted one transaction, and together they made an arrangement for mutual credit between them. Two theater men, who later formed the "Hastings Theatre & Realty Corporation," were interested in a theater on this property, and negotiated with the owner who desired a hotel there. The result was an agreement between them for the sale, erection of a building, and the lease. On the 15th of February, 1926, Monroe and Bard, acting as individuals, entered into a written agreement with Bryant for the sale of the real estate for $70,000 of notes, secured by this second mortgage, subject to a first mortgage of $125,000, which was to be a part of the money used to erect a hotel and theater building. Bryant agreed to lease a portion of the building by executing an attached lease when the building was inclosed. The building was to be ready for occupancy September 1, 1926. The notes were executed in a series, the first for $7,000 being due September 1, 1936, and one of $7,000 due each year thereafter until the sum of $70,000 was paid. It does not seem necessary to set out in full the contract and the attached lease, because the chief question relates to the right of set-off of the amount of accrued rent against the amount due on the notes secured by this second mortgage. This was evidently one contract and included the several instruments, but let us examine the evidence to determine if there was any arrangement for mutual credit between Bryant and the company.

It is not disputed that these were nonnegotiable notes. The notes of the company were made payable only to Bryant. By our statute a promissory note is not negotiable unless it is payable to order or bearer. Comp. St. 1929, sec. 62-101. It is argued this evidences that an arrangement was made by the parties to the agreement for mutual credit between them. On the other hand, the notes secured by the mortgage consist of a series of ten notes each for

$7,000, the first of which was due September 1, 1936, and one each year thereafter. The building was to be finished if possible by September 1, 1926, but the lease which was to be signed when the building was inclosed was not signed until March 7, 1927, for a term of fifteen years beginning April 1, 1927. The term of the lease and the period during which the mortgage indebtedness would mature did not approximately coincide. The rent due in the meantime was much more than any amount due on the mortgage notes. The rent was due almost ten years before the first principal note matured. This would in effect have made the mortgage debt payable before the time stipulated in the notes. This negatives the contention that there was any intention to make an arrangement for mutual credit. Such an idea is not expressed in any of the several written instruments signed by the parties. It was not contemplated by them at the time. The subsequent acts of the parties indicate that no agreement between the company and Bryant was made relative to mutual credit. Although no rent was paid after January 1, 1933, and the rent was not paid in full for 1932, the company paid the interest on these notes until May 1, 1933. This is significant evidence that there was no arrangement for mutual credit. Other acts of officers of the company in evidence do not require further comment.

It is argued however that the receiver and trustee, as assignees, had no greater rights against the company than their assignor, Bryant, and are subject to all the equities and defenses of the company against Bryant. These notes were assigned to the bank as collateral security by Bryant about November 21, 1928, and were in the collateral note case of the bank when it closed on October 5, 1931. Cronkleton became receiver thereafter, and took charge of the assets of the bank, including these notes. The assignment was made to the bank as collateral to Bryant's notes, which amounted on February 1, 1937, to $31,384.57. It is evident that these notes were assigned either to the bank or to the trustee. The applicable statutory provisions are:

"An action by the assignee of a thing in action shall be without prejudice to any set-off or other defense *existing* between the original parties; but this section shall not apply to negotiable bonds, promissory notes, or bills of exchange, transferred in good faith, and upon good consideration before due." Comp. St. 1929, sec. 20-303. "When cross-demands have existed between persons under such circumstances that if one had brought an action against the other a counterclaim or set-off could have been set up, neither can be deprived of the benefit thereof by the assignment or death of the other, but the two demands must be deemed compensated, so far as they equal each other." Comp. St. 1929, sec. 20-818.

Now the appellant company takes the position that notice is not so important, since the notes are subject to a set-off under any circumstances. We do not follow its reasoning or its conclusions. It has been stated by a recognized authority: "(1) An assignee's right against the obligor is subject to all limitations of the obligee's right, to all absolute and temporary defenses thereto, and to all set-offs and counterclaims of the obligor which would have been available against the obligee had there been no assignment, provided that such defenses and set-offs are based on facts existing at the time of the assignment, or are based on facts arising thereafter prior to knowledge of the assignment by the obligor. (2) Except as stated in subsection (3), an assignee's right against the obligor is subject to all set-offs and counterclaims which would have been available against the assignee if he were the original obligee." Restatement, Contracts, sec. 167.

Among cases cited in the annotations is that of *Henefin v. Live Stock Nat. Bank,* 116 Neb. 331, 217 N. W. 91. It supports the general rule stated in the text quoted, and is particularly applicable to our problem here. That rule is followed in *Citizens Nat. Bank v. Rawley,* 131 Neb. 10, 267 N. W. 151, and there stated in the following language: "Notice is not material unless the party liable on the assigned contract after the assignment acquired some defense. As

to such defenses, the assignment takes effect from the time notice is given the obligor and not from the time of the assignment."

Certainly the assignee of a chose in action (as each note in this case) generally acquires no greater rights than those of the assignor, and takes it subject to all the defenses existent at the time. See the discussion of this rule in 4 Am. Jur. 304 and 305, and the many cases cited thereunder, including the Nebraska case of *Henefin v. Live Stock Nat. Bank, supra.* The *Henefin* case involved a check, indorsed and deposited in one bank, and drawn on another. The factual situation as to the ownership of the check was in dispute, but when that was once determined, there was no great difficulty with the law applicable. The case is reviewed in 6 Neb. Law Bulletin, 416. It is cited with approval in other cases. Long ago this court stated the rule in another way when it said: "School district warrants do not possess the qualities of negotiable paper, and the purchaser thereof takes them subject to all equities existing against the original holder." *State v. Melcher,* 87 Neb. 359, 127 N. W. 241. This latter case and the *Henefin* case are cited, followed and approved more recently by this court in *Lincoln Nat. Bank & Trust Co. v. School District,* 124 Neb. 538, 247 N. W. 433.

There was no defense against the notes at the time of the assignment. They were not due, and the rent was due periodically during that time. The notes would not have been an offset against the rent because they were not due.

It has been held by this court: "Ordinarily, an assignee of a chose in action takes the same right as was possessed by, and subject to the same defenses and equities which could be enforced against, his assignor at the time of the assignment, and such defenses and equities accruing thereafter in the absence of notice to the debtor of such assignment." *Union Nat. Bank v. Village of Beemer,* 123 Neb. 778, 244 N. W. 303.

A well-known authority discusses this question as fol-

lows: "Until the debtor receives notice of the assignment, or, as the rule is sometimes stated, until he has knowledge of such facts concerning the same as are sufficient to put him on inquiry, he may deal with the assignor as if no assignment had been made. He may pay the assignor, even though the debt is not due at the time he makes such payment, or he may pay a subsequent assignee of whose assignment he has notice, or any person vested with apparent authority to receive payment, or an attaching creditor of the assignor under order of the court, the whole or any part of the debt. The debtor may subject the chose in the hands of the assignee to all equities against the assignor * * * prior to the time when he received notice of the assignment; *but as to equities arising thereafter the rule is otherwise.*" 5 C. J. 978.

At another place, this same authority discusses the question under the subject of set-off and counterclaim as follows: "Demands arising in favor of defendant against the assignor after notice of the assignment cannot be set off or counterclaimed against the claim of the assignee, at least where such subsequently accruing claims are independent of their origin, not arising from the same contract or transaction as the assigned claim, and even though they had their origin in transactions previous to the giving of notice." 57 C. J. 485.

There are many authorities cited under these last two quotations in Corpus Juris, and they indicate that the great weight of authority supports the rule. No cases have come to our notice which are contrary. The rule applicable to this case is that defenses arising against the assignor, after notice of the assignment, cannot be set off against the claim of the assignee.

The trial court found from conflicting evidence that the "Hastings Theatre & Realty Corporation" had notice or knowledge of facts which charged it with notice of the assignment as to the receiver as of October 31, 1932, and the trustee is charged with notice as of the 25th of January, 1933. As far as the issues in this case are con-

cerned, it is immaterial, and no great complaint is made to that finding by the appellant. In fact, the dispute is only about a few months, anyhow.

It is our conclusion, therefore, that there is no error in the record, and that the offset offered as a defense was not available against the assignee.

AFFIRMED.