HENRY B. BABSON, APPELLANT, V. VILLAGE OF ULYSSES, A MUNICIPAL CORPORATION, IN BUTLER COUNTY, NEBRASKA, APPELLEE.

52. N. W. 2d 320

Filed March 14, 1952. No. 33112.

J. J. *Thomas* and *Charles F. Barth,* for appellant.

*Flansburg & Flansburg,* and *Coufal & Shaw,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

Here are two actions instituted by Henry B. Babson, plaintiff and appellant, against the Village of Ulysses, a municipal corporation, defendant and appellee. The two were consolidated for the purposes of trial and tried as a single action. They will be regarded and treated as one action here.

By the actions plaintiff claims that there is due him from the defendant $100 a month from December 1930 to and including July 1936 with interest at seven percent per annum. The indebtedness is denied by the defendant.

A trial was had to the court at the conclusion of which it was adjudged and decreed that the defendant was not indebted to plaintiff and plaintiff's actions were dismissed. Motions for new trial were duly filed and overruled. From the judgments and the orders overruling the motions for new trial the plaintiff has appealed.

The basis of the litigation is substantially the following: The village of Ulysses entered into an agreement with the Blue River Power Company to supply the village with electric current for all its needs for a period of 20 years commencing April 1, 1920, which energy was to be delivered at the village substation and by the village distributed to its customers. This contract was not actually entered into until September 20, 1921. As a part of the consideration the village agreed to pay to the company $100 a month for 200

months. This part of the consideration was by the parties denominated a "primary charge." It was a part of the rate structure and it appears that its design was to amortize the cost of a transmission line constructed by the company which was necessary to serve the village. The further consideration of the contract was the payment of a specific rate for each kilowatt hour for all electric current used. This was referred to as a "secondary charge." The validity of this contract was not brought into question on the trial.

There was full and complete performance by both parties under the contract until October 17, 1925. On October 17, 1925, all of the stock of the Blue River Power Company was sold to the United Light and Power Company. The stock had been owned by the plaintiff herein. By the terms of the agreement whereby the United Light and Power Company obtained this stock Babson became entitled by assignment to the payment of the $100 a month or "primary charge" from the defendant herein. He became entitled to other properties and interests theretofore belonging to the Blue River Power Company but we deem it unnecessary to describe these interests here since the village was not a party to the agreement and it is not made to appear that it ever prior to this action became informed as to its contents.

It is to be observed that this assignment represented an obligation of the United Light and Power Company to plaintiff and not one of the village to him, and that this was the method adopted by the power company and plaintiff for its liquidation.

The village was notified of assignment of the "primary charge" of $100 a month provided for in the contract. The body of the notification is the following:

"I have been instructed to inform you that at a recent meeting of the Board of Directors of the Blue River Power Company, resolutions were passed, assigning the $100.00 per month, identified as being a primary charge, in our contract with the Village, to H. B. Babson.

"In the future, commencing with the next payment, you will therefore please remit this $100.00 each month, as provided for in the contract, to H. B. Babson, 19th St. & California Avenue, Chicago, Illinois. Payments due for actual current consumed, and stipulated in the contract as being secondary charge, will be payable to the Blue River Power Company, here at Seward, as in the past.

"I kindly ask that you acknowledge receipt of this letter and make payments as per above instructions."

On May 31, 1926, the Nebraska Gas and Electric Company succeeded the United Light and Power Company and became the assignee of the Blue River Power Company contract, and on August 30, 1927, the Iowa-Nebraska Light and Power Company became the assignee thereof.

The village continued to make the monthly payments of $100 each to the plaintiff until December 1930.

On December 2, 1930, the village sold its distributing system to the Iowa-Nebraska Light and Power Company and granted this company a non-exclusive right and franchise for a term of 25 years to build, operate, and maintain an electric power system in the village. The village at this time ceased to be a distributer of electric current. It ceased also to be a purchaser except for a sufficient amount of current to operate its water system. It became such purchaser under the new contract.

Upon the completion of this arrangement the power company and the village regarded the relationship, which by agreement commenced on April 1, 1920, as ended and in consequence the defendant made no further payments to the plaintiff.

The actions here are by the plaintiff to recover from the defendant the monthly payments remaining after December 1930 under the contract between the Blue River Power Company and the village of Ulysses hereinbefore described which became effective as of April

1, 1920, and entered into on September 20; 1921, except the payments for four months which were not due at the time of the commencement of the second action.

Plaintiff by his actions contends that by virtue of his assignment he became entitled to these amounts as they would have come due had the contract and performance thereof not been abandoned by the parties thereto, and to a judgment therefor against the defendant. The judgment of the trial court was a denial of this contention and a dismissal of the actions.

The briefs of plaintiff contain numerous assignments of error and the assertion of many reasons why the judgment should be reversed. We think however that a proper decision herein depends upon the one question of whether or not the plaintiff was entitled to assert a claim against the village under his assignment after the village and the Iowa-Nebraska Light and Power Company ceased to operate under the Blue River Power Company contract.

In the determination of this question it becomes necessary to examine and apply certain facts as well as certain legal principles.

There is no substantial dispute as to controlling facts. The cases come here on the transcript which contains the pleadings and judgment, a stipulation of facts, and the testimony of a single witness. The testimony of this witness was contained in a deposition which was read at the trial.

It is not disclosed by the record that the village ever was notified or had authentic knowledge of the substance or effect of any of the agreements whereby the agreement of the Blue River Power Company or the obligations thereof were transferred to the United Light and Power Company, then to the Nebraska Gas and Electric Company, and then to the Iowa-Nebraska Light and Power Company. The only thing in that connection which came authentically to its knowledge was the information contained in the notification of assignment

of the "primary charge." This notification has been previously quoted at large herein. It will be observed that by this the village was notified only that the "primary charge" of $100 a month was assigned to plaintiff and the village was directed to make payments as they became due to him.

Further the record does not disclose any contractual relationship or privity with reference to this subject matter between plaintiff and defendant. In this connection the record discloses only that the village became informed that through an undisclosed arrangement between plaintiff and the power company plaintiff became entitled to receive a part of the consideration which flowed to the company under the terms of a contract which it had with the village. Whatever right plaintiff had to receive the payments of $100 each flowed from and was the obligation of the agreement or agreements between him and the power companies successively and not from any agreement with the village.

Under this state of facts the defendant contends that it and the company had the right under law to discontinue operation and performance under the contract or in other words to rescind it without liability thereafter on the part of the defendant to the plaintiff on his assignment. It contends that no obligation to pay remained after the parties by mutual action discontinued operation under and performance of the agreement which became effective April 1, 1920.

The contentions of the defendant in this respect must be sustained.

The assignment here was of payments of money to become due under an executory contract which the parties thereto were privileged to rescind or discharge entirely or to modify by agreement thus relieving each from the further obligations thereof in case of rescission or discharge and substituting the new ones in case of modification. Mather v. Butler County, 28 Iowa 253;

Sawyer v. Hawthorne, 167 Iowa 410, 149 N. W. 512; Smith v. Kelley, Maus & Co., 115 Mich. 411, 73 N. W. 385; Vande Stouwe v. Bankers Life Co., 218 Iowa 1182, 254 N. W. 790; Denler & Denler Land Co. v. Eby, 277 Mich. 360, 269 N. W. 203; Enderlien v. Kulaas, 25 N. D. 385, 141 N. W. 511; 13 C. J., Contracts, § 594, p. 588, § 604, p. 589; 17 C. J. S., Contracts, § 373, p. 857, § 387, p. 879.

An assignment of a contract or a right flowing therefrom does not create a contractual obligation between the assignee and the other party to the contract in the absence of assumption of the liabilities of the assignor by the assignee. 4 Am. Jur., Assignments, § 102, p. 310; Tolerton & Stetson Co. v. Anglo-California Bank, 112 Iowa 706, 84 N. W. 930, 50 L. R. A. 777; Pioneer Loan & Land Co. v. Cowden, 128 Minn. 307, 150 N. W. 903.

In the present instance there was no assumption by the plaintiff of liabilities of the assignor to the village.

An assignee of the obligation of a contract takes subject to its burdens in the hands of the assignor and in order to recover he must show that the conditions have been performed. He is bound by the terms of the contract to the same extent as the assignor. 4 Am. Jur., Assignments, § 104, p. 311; Florida East Coast Ry. Co. v. Eno, 99 Fla. 887, 128 So. 622, 70 A. L. R. 506; Detroit Postage Stamp Service Co. v. Schermack, 179 Mich. 266, 146 N. W. 144, Ann. Cas. 1915D 287; Pioneer Loan & Land Co. v. Cowden, *supra*.

Here there was an absence of performance by the power company covering the entire period contemplated by the actions.

An assignee of a non-negotiable chose in action ordinarily acquires no greater right than that possessed by his assignor. He stands in the shoes of the assignor. He cannot sue if the assignor could not have maintained an action. Henefin v. Live Stock Nat. Bank, 116 Neb. 331, 217 N. W. 91, 58 A. L. R. 758; First Nat.

Bank v. Rogers, 50 Nev. 325, 258 P. 1024, 58 A. L. R. 902; Florida East Coast Ry. Co. v. Eno, *supra;* Steltzer v. Chicago, M. & St. P. Ry. Co., 156 Iowa 1, 134 N. W. 573, L. R. A. 1915E 1017; 4 Am. Jur., Assignments, § 95, p. 304.

After the agreement was mutually rescinded and performance abandoned no burden of payment remained upon the village. The assignor and its successors surrendered their right to receive or recover the monthly amounts. Consequently the right of the assignee to receive them from the village no longer existed.

It must be said therefore that the mutual rescission of the contract which is brought into question here destroyed the right of plaintiff to recover thereafter from the village on his assignment unless, as plaintiff contends, the pretended rescission was void and of no effect.

The basis of this contention is that the village trustees had no authority or power to alter the terms of or abandon the contract of September 20, 1921. The theory is that authority for the proceedings in this connection was not received through a vote of the electors of the village, which plaintiff insists was a condition precedent to the exercise of such power.

Our attention however has not been called to any statutory provision in existence at the time of the rescission imposing any such requirement. Attention is directed to section 70-604, C. S. Supp., 1931, erroneously referred to as section 70-605, which prohibits the sale, lease, or transfer of an electric light or power plant, distribution system, or transmission lines by a village without a vote of the qualified electors. This provision however did not come into being until one day following this rescission.

Reliance is had also on section 17-508, Comp. St. 1929, now sections 17-901 to 17-904, R. S. 1943. This section in nowise relates to existing contractual relationships. It relates to powers and restrictions thereon to enter into contracts.

It is concluded that the claim of the plaintiff as made that the rescission was void and of no effect is without merit.

The judgments of the district court are affirmed.

AFFIRMED.