MID-AMERICA APPLIANCE CORPORATION, A CORPORATION, APPELLEE, V. FEDERATED FINANCE COMPANY, A PARTNERSHIP, APPELLANT, IMPLEADED WITH CONSUMERS MART, INC., A CORPORATION, APPELLEE.

109 N. W. 2d 381

Filed May 26, 1961. No. 34949.

*Wagener, Marx & Galter,* for appellant.

*Viren, Emmert, Hilmes & Gunderson* and *Eleanor Knoll Swanson,* for appellee Mid-America Appliance Corp.

*Emory P. Burnett,* for appellee Consumers Mart, Inc.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is an action for an accounting brought by Mid-America Appliance Corporation, the appellee, who will be referred to as plaintiff, against Federated Finance Company, the appellant, who will be referred to as defendant. The plaintiff recovered judgment in the sum of $4,285.57 in the trial court. The defendant's motion for new trial was overruled, and the defendant appealed.

The defendant's assignments of error are, in substance, that the court erred in permitting the plaintiff to recover. In an appeal in an action in equity the issues of fact complained of are tried de novo and the court will reach an independent conclusion without reference to the findings of the district court. § 25-1925, R. R. S. 1943.

The evidence consists of stipulations, several exhibits, and the testimony of J. L. Caplan, a partner in Federated Finance Company, the defendant.

The evidence shows that in February 1953, Earl Burnett, Jr., representing Consumers Mart, Inc., a corporation, talked with Caplan about establishing a finance connection with the defendant. Consumers Mart was looking for someone to purchase its installment paper, consisting of conditional sales contracts, and to finance its inventory of appliances under a floor-plan arrangement. The defendant agreed to purchase installment paper from Consumers Mart upon a selected basis, with full recourse. That meant that the defendant would consider installment paper offered to it by Consumers Mart upon an item-by-item basis and that the defendant was not obligated to purchase any paper offered to it. It was further agreed that the defendant would withhold a part of the amount due Consumers Mart on each item purchased which would be credited to a reserve account and held by the defendant as a protection "against any and all liabilities" arising between Consumers Mart and the defendant. The reserve accounts have remained in the hands of the defendant and under its control at all times. The defendant did not enter into a floor-plan arrangement with Consumers Mart until July 1954.

On November 19, 1953, Consumers Mart executed and delivered its promissory note to the plaintiff in the amount of $6,320.68. The note was due 5 years after date. On May 28, 1955, Consumers Mart paid $3,000 on the note. Consumers Mart has been insolvent since this action was commenced.

To secure the payment of its note, Consumers Mart executed and delivered to the plaintiff a written assignment of any reserve accounts due and owing to it by the defendant and State Securities Company. The assignment was made "subject to the right, title and interest of the said finance companies in the said reserve

accounts" and "subject to the condition, that the said State Securities Co. and Federated Finance Co. have some right, title or interest therein by virtue of the purchase from us of deferred payment obligations which gave rise to the said reserves and deferred payment certificates." The assignment also provided that in the event of the insolvency of the maker or default on the note, the holder of the note was authorized to collect the collateral. There is no evidence that the plaintiff made any demands upon the defendant until this action was brought.

On November 21, 1953, a written notice of the assignment was delivered to the defendant. The notice stated that the defendant was "authorized and directed to hold the said reserve accounts" for the plaintiff.

As of November 21, 1953, the balance of the reserve accounts held by the defendant amounted to $9,204.20. Thereafter $739.93 was added to the reserve accounts and $7,991.86 was withdrawn. Of the amount withdrawn, $33 represented losses on paper purchased after November 21, 1953, and $1,508.36 for loss resulting from the floor-plan arrangement.

The defendant admits that it holds $1,954.77 which may be applied to the indebtedness between the plaintiff and Consumers Mart. The controversy is over the defendant's right to charge $1,508.36 loss from the floor-plan arrangement and $33 loss from contracts purchased after November 21, 1953, to the reserve accounts.

An assignee generally acquires no greater right than that possessed by the assignor. Hansen v. E. L. Bruce Co., 162 Neb. 759, 77 N. W. 2d 458. The assignee stands in the shoes of the assignor and is bound by the terms of the contract to the same extent as the assignor. Babson v. Village of Ulysses, 155 Neb. 492, 52 N. W. 2d 320.

The assignment from Consumers Mart conveyed to the plaintiff only the rights that Consumers Mart had in the reserve accounts. Thus, the real inquiry in this case is what rights did Consumers Mart have in the reserve

accounts held by the defendant on the date of the assignment.

The undisputed evidence is that "the function of that reserve account was to protect us against any and all liabilities arising between their company and our company. Between Consumers Mart and Federated Finance Company, if you prefer." Consumers Mart had no absolute right to any part of the balance in the reserve accounts until all liabilities, contingent or otherwise, between Consumers Mart and the defendant had been ascertained and discharged.

The reserve accounts were intended to protect the defendant against liabilities from future transactions as well as past transactions. Consumers Mart and the defendant contemplated a floor-plan arrangement at the time the reserve accounts came into being. Consumers Mart wanted a floor-plan arrangement from the first but the defendant was not willing to make such an arrangement until after Consumers Mart had built up a reserve account. There is no evidence as to any provision in the agreement permitting Consumers Mart to withdraw any part of the balance in the reserve accounts while the defendant was purchasing paper from Consumers Mart.

The plaintiff contends that after notice of the assignment, the defendant had no right to continue to purchase installment paper, enter into the floor-plan arrangement, and charge the losses resulting from these transactions against the reserve accounts. The difficulty with this position is that it assumes that the assignment of the reserve accounts changed the rights of the defendant in the reserve accounts. To sustain the plaintiff's position it would be necessary to say that the defendant had less rights in the reserve accounts after the assignment than before. This would amount to giving the plaintiff some of the defendant's rights in addition to those which it obtained from Consumers Mart.

The parties have not cited and our attention has not

been directed to any case involving an identical fact situation. However, Grossi v. Rialto Security Corp., 273 N. Y. 403, 7 N. E. 2d 836, involved a somewhat similar fact situation. In the Grossi case the defendant had entered into an accounts receivable financing agreement with a shoe company. Unlike the agreement in the case at bar, the shoe company had agreed not to apply for advances on accounts receivable from any source other than the defendant Rialto Security Corporation and all such advances were to be made by the defendant. The agreement also provided for the assignment of accounts receivable to the defendant, and the defendant had the right to apply money collected from one group of accounts to a deficiency existing in any other group of accounts. The plaintiff was the assignee of a group of accounts that had been previously assigned to the defendant, and the plaintiff's assignment was made subject to rights of the defendant. A controversy arose when the group of accounts assigned to the plaintiff produced a surplus of $750 and the defendant sought to apply this surplus to a deficiency in a group of accounts assigned to the defendant after notice of the plaintiff's assignment. The New York court held that the factoring agreement was a continuing one and that the assignment from the shoe company to the plaintiff could not deprive the defendant of its right to make up any deficiency out of all accounts, whether assigned before or after the assignment of the defaulting accounts, and to make additional advances to spread its risk.

Cronkleton v. Hastings Theatre & Realty Corp., 134 Neb. 168, 278 N. W. 144, cited by the plaintiff, did not involve a similar fact situation. In the Cronkleton case the court held that rent accruing under a lease to the payee of certain nonnegotiable notes could not be set off against an assignee of the notes. The notes had been assigned approximately 8 years before the first of the series became due and the rent was not delinquent at the time of the assignment. The court held that the

parties had not made an arrangement for mutual credit.

The plaintiff is entitled to judgment in the amount of $1,954.77, with interest at 6 percent per annum from May 5, 1960. All costs should be taxed to the plaintiff. The judgment of the district court should be modified to conform to this opinion, and as so modified is affirmed.

AFFIRMED AS MODIFIED.