## Michels *v.* Olmstead.

(*Circuit Court, W. D. Missouri.* October Term, 1882.)

1. EVIDENCE—PAROL MERGED IN WRITING—COLLATERAL MATTER OR CONDITION.
When parties, without any *fraud* or *mistake*, have deliberately put their engagements in writing, the law declares the writing to be not only the *best* but the *only evidence* of the agreement; but this does not prevent parties to a written agreement from proving that either contemporaneously or as a preliminary measure they had entered into a distinct oral agreement on some collateral matter, or an oral agreement which constitutes a condition on which the performance of the written agreement is to depend.

2. FRAUD NOT PRESUMED.
Where a defense of fraud and deceit is set up, the law will presume that the plaintiff acted honestly and in good faith, until defendant has clearly proven the contrary.

*Tichenor & Warner*, for plaintiff.

*Peak & Yeager*, for defendant.

KREKEL, D. J., (*charging jury.*)   The plaintiff, Jacob Michels, sues George P. Olmstead on an agreement in writing which stipulates for machinery to be furnished by plaintiff to the defendant at specified prices.   The law favors written agreements between parties to a contract, because they are supposed to decrease the liabilities for misunderstanding.   It is presumed that when a written agreement is entered into that it contains the whole of the conditions and undertakings of the parties to the contract.   The supreme court of the United States has had this matter under consideration lately, and I quote from its decision so much as will show the views taken of written contracts.   Chief Justice WAITE, in *Bast* v. *Bank*, 101 U. S. 96, says :

"When parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of the agreement, and we are not disposed to relax the rule.   It has been found to be a wholesome one, and now that the parties are allowed to testify in their own behalf, the necessity of adhering strictly to it is all the more imperative."

The contract read in evidence must be taken to set out the whole of the agreements of the parties, and no change of it can be made by verbal testimony unless the instrument itself shows on its face that certain matters pertaining to it are left undetermined, and when this is the case testimony may be admitted to complete the contract, so to speak.

In the quotation made from the opinion of the supreme court of the United States there are two exceptions stated to the law regarding written agreements between parties, and these are fraud and mistakes. To bring the defenses made by the defendant within this rule, he has set up in his answer certain acts and doings of the plaintiff, claiming them to be frauds upon him. It is alleged by the defendant that he was entirely ignorant of the value of the machinery for which he contracted, and that he relied on the plaintiff for the reasonableness of the charges, and plaintiff was thus enabled to deceive and did grossly deceive him regarding the cost of the articles. A manufacturer under such circumstances, if satisfactorily proven, is bound to make reasonable charges, but as nearly all articles contracted for vary in prices in different manufacturing establishments, no definite rule can be laid down as to prices, and unless they are found to be grossly exorbitant the agreement made regarding them must stand. In the attempt to arrive at a conclusion as to such charges, as by their grossness amount to a fraud, you will take into consideration the knowledge the defendant had of the value of such articles and the means at hand to inform himself regarding such. If he failed to exercise due caution, was careless or neglectful of his interest, he cannot set up his own shortcomings in his defense. This, however, affects the amount of damages only, and if plaintiff is found entitled to any damages, such an amount will be allowed him as will give him reasonable profits, estimating the original cost at the usual prices. If the machinery was to be furnished at cost, he is entitled to nominal damages only.

Another defense is that the so-called dry process by which syrup may be produced from corn is valueless, and that a marketable article cannot be produced thereby, and that the defendant was thus imposed on. The testimony on this branch of the case is conflicting, and it is here where the guaranty made by the plaintiff in the contract sued on that the process named will not only produce a merchantable article, but also in certain quantities from a given amount of corn, is of avail to the plaintiff. Under his part of the contract the defendant has a right that the means of practically testing the

process, if not already satisfactorily done, should be furnished. The defendant has chosen in this particular to rely on his guaranty, and might have secured himself in the contract against losses having their origin in a defect of the process; and unless you shall find from the testimony that the dry process is utterly worthless for the production of a merchantable article of syrup, you should find the issue on this branch of the case for the plaintiff.

If you shall find from the testimony that fraud and deceit were practiced by plaintiff Rogers or Stebbins regarding the dry process, and the defendant was thereby induced to enter into the contract, which he would not have done but for such fraud and deceit, such fraud and deceit vitiate the contract, and the defendant is relieved of any obligation incurred thereby. It will be remembered, however, in the consideration of the question of fraud, that the law abhors it, and will not attribute the commission thereof to any one, but, on the contrary, presumes that the action of the plaintiff was honest and fair. Moreover, the defendant sets up the frauds regarding the gross excess of prices charged for machinery, the frauds and deceits practiced in reference to the utility of the dry process, and he, the defendant, is held to establish these frauds on the part of the plaintiff or his confidant to your satisfaction. As already stated, the law presumes that the plaintiff acted honestly and in good faith in entering into the contract in evidence; and unless the defendant has shown to your satisfaction that he acted fraudulently in fact, you must find the issue made as to frauds and deceits for the plaintiff.

To another branch of the case I now proceed to call your attention. The written contract itself refers to, and verbal testimony is introduced to show that defendant contracted with reference to the organization of a corporation, which was to assume the obligation which he incurred by virtue of entering into the contract read in evidence, and he, the defendant, claims to be released from his obligation because such a corporation was not organized. The question here is, did the defendant enter into a binding agreement at all? You will remember what was said about the binding obligation, the solemnity of a contract, and the presumptions of law that the whole of the matters pertaining to the contract must be assumed to have been stated therein. This, however, does not touch upon or exclude the defendant from showing the conditions under which the contract was signed. Law writers have expressed the idea sought to be conveyed in the following language:

"The denial of explaining a contract by verbal testimony does not prevent parties to a written contract from proving that either contemporaneously or as a preliminary measure they had entered into a distinct oral agreement on some collateral matter. Still less does it exclude evidence of an oral agreement which constitutes a condition on which the performance of the written agreement is to depend."

Or, as another writer expresses it:

"The first question to determine in construing a document is whether there is a document to construe. Hence it is always admissible to show by parol that a document was conditioned on an event that never occurred."

Thus, in the case before you, if you shall find from the testimony that Olmstead signed the contract sued upon with the full, definite understanding by both Michels and himself that he, Olmstead, was not to be liable personally in the event no corporation was formed, he is not bound by the contract, and you will so find by your verdict. With the $46,000 contract which was to be carried out by Olmstead himself in case of the failure of the 2,000-bushel house of which mention was made, you have nothing to do, the plaintiff not having sued thereon.

In case you find the issues for plaintiff, you will state the amount allowed him. If you find the issues for the defendant, you will so state in your verdict.