UNITED STATES NATIONAL BANK OF OMAHA, APPELLEE, V.
ADA E. ALEXANDER: BYRON G. BURBANK, APPELLANT.
1 N. W. (2d) 920

FILED JANUARY 16, 1942.   No. 31228.

*Burbank & Burbank,* for appellant.

*Munger & Rhodes, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE,
CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

This is an appeal from the decree of the district court on

the final report and account of the United States National Bank of Omaha, Nebraska, trustee, plaintiff and appellee, against Byron G. Burbank, defendant and appellant. The report and account were approved, and the defendant has appealed, and asserts that certain of the items in the report were improper and should not have been allowed and approved.

A somewhat extended statement is necessary to an understanding and determination of the issues presented by the record in this case.

On and prior to August 20, 1924, Lake Deuel was the owner of certain real estate situated in Omaha, Douglas county, Nebraska. On this date Deuel executed and delivered to the Peters Trust Company, a corporation, a trust deed, whereby the Peters Trust Company became trustee of this real estate. The trust was for the purpose of securing payment of 191 certain bonds in the aggregate principal sum of $105,000, bearing the same date as the trust deed and maturing on various dates beginning October 1, 1925, and ending October 1, 1934. The bonds were interest-bearing at the rate of 6 per cent. per annum, payable semi-annually with 10 per cent. after maturity. Later, on December 9, 1924, a supplemental trust deed was executed and delivered which added to the original trust to secure the payment of bonds all tenements, hereditaments and appurtenances upon the real estate in question. It included also all fixtures, equipment and personal property employed in the use and operation of the building on the real estate, which building had been completed after the execution of the original trust deed.

On October 1, 1932, Deuel had paid $32,000 of the indebtedness and all of the interest to that date, but on April 1, 1933, he defaulted in the payment of interest.

In 1930 the Peters Trust Company failed, and agreeable to the terms of the trust indenture the United States National Bank of Omaha, Nebraska, became successor-trustee.

On November 13, 1933, foreclosure proceedings were instituted by the successor-trustee. On May 28, 1935, a

decree in foreclosure was entered, whereupon Deuel took a statutory nine-month stay.

Two months after the default in payment of interest by Deuel, a bondholders' protective committee, consisting of G. S. Cobb and William F. Milroy, bondholders, and Ellsworth Moser, vice-president of the United States Trust Company, was in some manner organized, purportedly for the purpose of protecting the interests of the bondholders.

Prior to foreclosure this committee conducted certain negotiations, the details of which are not sufficiently important to be set out here, looking to an adjustment of the difficulties attendant upon the default by Deuel, but nothing came of them.

After the foreclosure decree was entered, and stay had been taken by Deuel, the committee again became active and procured an offer from Deuel that he, having come into ownership by inheritance of $9,400 worth of bonds issued under the trust indenture, would withdraw his stay, surrender his bonds, and surrender title to the trustee to the property described in the original and supplemental trust indentures in consideration, in substance, of the release of any claim or right to deficiency judgment against him. On receipt of this offer the committee procured from all holders of outstanding bonds, which at that time amounted to $63,600, without considering those held by Lake Deuel himself, except from those holding $1,600 of bonds, consent to this arrangement.

Not having been able to secure the consent of all bondholders to this arrangement, the trustee instituted the action of which this is an outgrowth and a supplemental part, to which all bondholders, Lake Deuel and Eloise Deuel, his wife, and Ellsworth Moser were made parties, seeking directions as to what steps to take and what course to pursue. In the petition the facts summarized briefly here were fully detailed. All defendant bondholders except two entered voluntary appearances. The two were served by publication and defaulted. The decree recites that the Deuels answered, but the answer does not appear in the

transcript. The defendants Moser and Cobb filed an answer on behalf of the bondholders' committee, setting forth the activities of the committee. No other party answered the petition. On November 9, 1935, decree was entered authorizing and directing the consummation of the proposed deal with Deuel, and authorizing and directing the issuance of land trust certificates of beneficial ownership in Princeton apartments, Nineteenth and Dodge streets, Omaha, Nebraska, which certificates will be hereinafter referred to as land trust certificates; to the bondholders in place of and in amounts equal to the value of the bonds held, and the surrender of the bonds by the holders.

The decree confirms an accounting made by the trustee, and makes the following allowances: United States National Bank of Omaha, trustee, $195; Ellsworth Moser and G. S. Cobb as the bondholders' committee, $730; Brown, Fitch & West, attorneys for Lake Deuel and Eloise Deuel, $150; Crossman, Munger & Barton, attorneys for the bondholders' committee, $1,500; total $2,575.

There being a balance in the hands of the trustee after settlement of account and payment of allowances, it was ordered that this balance should be held until the issuance of the land trust certificates and then distributed *pro rata* to the certificate-holders.

The decree then concluded as follows: "That this court should, and hereby does retain jurisdiction of this cause of all of the parties to this suit and of the said trust estate for the purpose of supervising the management and control of the trust assets by the trustee, and, from time to time, giving instructions and directions to the said trustee concerning the trust, and particularly with reference to any proposed sale or sales of the trust assets, which shall be subject to the approval of this court."

In January, 1936, the trustee made a detailed report of its acts beginning April 13, 1933, and ending January 16, 1936, and made distribution of income from the trust to the bondholders. Following, or as a part of the same transaction, the directed exchange of bonds for land trust

certificates was made, and each receiver of a trust certificate, except Grant Lewis, Walker Lewis, C. J. McNamara, Alice Polian, Marie Polian and Marian Polian, executed an instrument in part in terms as follows: "The undersigned further acknowledges receipt of a letter from the trustee dated January 22, 1936, reporting in detail all receipts and disbursements of the trustee relative to the said Princeton apartments, and hereby ratifies, confirms, and approves all of the acts and doings of said trustee and the bondholders' committee concerning the Princeton apartments trust, to date as reported in said letter, and in said lawsuit, and agrees to the continuing jurisdiction of the court over said trustee, and the said trust estate, in the case of the United States National Bank of Omaha, plaintiff, vs. Ada E. Alexander, et al., defendants, doc. 313, No. 19, in the district court of Douglas county, Nebraska, in which case the undersigned has made a voluntary appearance, and is a party defendant."

This trust, authorized and under the control of the district court, existed until decree on the final report of the trustee was entered on March 21, 1941.

On April 17, 1940, Byron G. Burbank, now the sole defendant in this action by substitution, having become the owner of 70 land trust certificates, commenced action for partition of the trust property. In that action the trustee and a number of certificate-holders filed pleas in abatement. The pleas were argued and presented, but no ruling was ever had thereon, and in the course of time the action was dismissed at the request of plaintiff. The fact is of no significance except that it has a bearing upon an item of expense set up in the final report of the trustee, which item is objected to by the defendant.

After the dismissal of the partition action Byron G. Burbank acquired all of the outstanding land trust certificates by assignment, and on his application he was, by order of court, on November 19, 1940, substituted as party defendant and all others were dismissed from the action. On the same day, pursuant to order, the trustee executed and delivered

to Burbank a deed conveying to him the legal title to all the real and personal property standing in the name of the trustee and which was a part of this trust.

On or about November 29, 1940, the trustee filed its final report and account, and application for allowance for fees to the trustee and attorneys for the trustee. To this report Burbank filed exceptions, and to the extent that they are carried into and presented in the brief they are as follows: Fees and expense of trustee, disbursed, $1,669.50; fees of attorneys for trustee, disbursed, $2,100; profits on insurance, $739.59; fees to bondholders' committee paid out under decree of November 9, 1935, $730; attorneys for Lake Deuel, $150; receiver's fee, $150; final fee for trustee, not disbursed, $1,272; and final fee for attorneys for trustee, not disbursed, $600.

Also in his exceptions Burbank contends that the trustee should be charged with interest at 6 per cent. on rents claimed to have been withheld by the trustee, in the amount of $404.16, and for wages paid to Burnadette Connelly by a remission of rent at the rate of $20 a month for 41 months, or a total of $820.

The court ruled against Burbank on all of his exceptions except that the fee of the attorneys for the trustee was fixed at $600 instead of $1,000, the amount requested, and decree on final account was entered accordingly. It is from this decree on final account that Byron G. Burbank, the sole remaining defendant, has appealed.

It now becomes clear that we are dealing with two separate and distinct trusts instead of one. The first began with the execution and delivery of the original trust indenture, and it became extinct by decree of court in this case and the acts of the parties. With the death of the old, the new came into being. This transition came about on January 16, 1936, with the delivery up of the bonds and the issuance to the bondholders of the land trust certificates. Nothing remained of the trust except the obligation of the trustee to make an accounting of its stewardship. With the delivery of the land trust certificates a copy of this account-

ing was given to each bondholder. All of the bondholders accepted land trust certificates in lieu of their bonds. With the exception of Grant Lewis, Walker Lewis, C. J. Mc-Namara, Alice Polian, Marie Polian and Marian Polian, who held bonds in the amounts of $2,500, $2,500, $2,000, $1,000, $200 and $100, respectively, all of them, on receipt of their land trust certificates, in writing in the following language, "The undersigned further acknowledges receipt of a letter from the trustee dated January 22, 1936, reporting in detail all receipts and disbursements of the trustee relative to the said Princeton apartments, and hereby ratifies, confirms, and approves all of the acts and doings of said trustee and the bondholders' committee concerning the Princeton apartments trust, to date as reported in said letter * * *," approved the accounting and the stewardship of the trustee, which included all expense of trustee management, trustee's litigation expense and fees, and attorneys' fees. As a part of the accounting the trustee made a *pro rata* distribution to the bondholders, or as they then became land trust certificate-holders, of the accumulation of rents from the trust property. This account was approved by the court in this case. The account included specifically of the amounts questioned here by the defendant, trustee's fees and expenses in the amount of $495, fees for attorneys for the trustee in the amount of $1,500, a fee to Brown, Fitch & West, attorneys for Lake Deuel the mortgagor in the foreclosure action, in the amount of $150, and a fee to the bondholders' committee in the sum of $730, which items total $2,875.

The record discloses that no bondholder and no original holder of a land trust certificate has ever questioned this transaction, or the order of court allowing and approving it, directly by appeal or by action to set it aside on the ground that approval was obtained by fraud, or on any other ground. Moreover, Byron G. Burbank, the substituted defendant and assignee of the land trust certificates, does not now seek to do so.

It may be that some of the items involved in this account

were, at the proper time and in a proper manner, open to question and to attack, but after affirmative individual acceptance of the transaction by the bondholders and by decree of court thereon, may the assignee of the land trust certificates be heard to question the transaction in the manner he seeks to attack it here? We think not. Whatever of irregularity, if any irregularity there was, appears conclusively to have been waived some four years before Burbank acquired an interest in the case or its subject-matter.

The appellant asserts the rule that the assignments of the several owners to the defendant carried with them all the rights and interests of the assignors, including a right of action against the trustee. In support of this rule he cites numerous cases, among which are the following: *Home Fire Ins. Co. v. Barber,* 67 Neb. 644, 93 N. W. 1024; *Luikart v. Massachusetts Bonding and Ins. Co.,* 129 Neb. 771, 263 N. W. 124; *Citizens Nat. Bank v. Rawley,* 131 Neb. 10, 267 N. W. 151; *Amy v. Mann,* 136 Neb. 677, 287 N. W. 84. With this rule as a general statement of law we find no fault, but it has no application to the case at bar.

The correct rule in a case such as this, where prior to assignment the assignor has specifically approved the acts of the trustee who has made full disclosure of his acts and doings, is that the assignee cannot be heard to question the regularity of the acts of the trustee taking place before approval by the assignor.

It becomes clear that on January 16, 1936, the trust relationship, which came into being by the execution and delivery of the trust indentures and the issuance of bonds, came to an end and that the instrument fixing the duties, obligations and relative rights of the parties had no further force and effect.

At the same time a new trust relationship came into being by virtue of a decree of court as to all land trust certificate-holders, which was consented to by them in the instruments which they executed on exchange of bonds for certificates. No part of the contractual relation or duty

contained in the trust indentures was carried over into this second trust, except possibly some of the mechanics of the transfer of bonds for certificates and distribution of funds.

This second trust was, as has been said, a trust originally created by decree of court. Whether or not, in the strict sense, it was a judicial trust need not be determined here. While the creation of the trust is criticized, it is not attacked by the defendant. The defendant does not seek to disturb the trust, but only to require certain exactions of the trustee with regard to the performance of its duties as such trustee. In other words, he questions only the accounting which was approved by the court in what has been termed the final decree. This he had the right to do.

There having been no contract remaining which controlled the conduct and operation of the trust, what must be the approach to a consideration of the report of the trustee under the facts outlined in the record? It would appear that the matters for primary consideration are (1) legality of expenditure, (2) necessity, (3) advisability and (4) reasonableness of amounts.

The first thing to be considered is the fees of the trustee charged against the trust from January 16, 1936, in the amount of $2,603.97. An examination shows that no item may be rejected as void because of illegality of the charge and allowance. The same thing may be said with reference to attorney's fees in the amount of $1,685.88, covering the same period of time. That the various services were advisable and even necessary for the preservation and protection of the trust and for the benefit of the land trust certificate-holders can hardly be questioned.

There having been no contractual relationship fixing fees for any service after January 16, 1936, it became the duty of the court to determine the question of whether or not the charge made for these various services was reasonable. The burden rested upon the trustee, there being no question about the receipt of the funds by the trustee, to sustain the reasonableness of the charges against the trust. *In re*

*Estate of Mall,* 80 Neb. 233, 114 N. W. 156; *In re Estate of Boschulte,* 130 Neb. 284, 264 N. W. 881; *Rotzin v. Miller,* 133 Neb. 4, 274 N. W. 190; *In re Estate of Marlin, ante,* p. 245, 299 N. W. 626.

On the question of the reasonableness of these various fees for the trustee and its attorneys, we observe that the evidence directly bearing thereon is somewhat fragmentary. In truth, the items are not all taken up separately, and the reasonableness inquired into, but there is some evidence bearing on the question. In addition to this, all of the service was performed under control and supervision of the trial court and the court had some knowledge of what service was performed under its supervision, and in consequence we have a right to assume that the trial court did, as was its right and duty, take this into consideration in approving the final report and in the making of allowances of fees for services. As we analyze the report in the light of the evidence, taking into consideration the period over which the service extended, the various services performed, and the results accomplished, we conclude that the amounts allowed for services of the trustee and its attorneys were reasonable.

This holding is in keeping with the recent holding of this court in *In re Estate of Linch,* 136 Neb. 705, 287 N. W. 88, where it was stated: "In allowing compensation for services performed by a trustee for the benefit of a trust estate, such matter is addressed to the sound discretion of the court, and it is the duty of a court of equity to exercise a just discretion and make or withhold allowances as to particular circumstances required."

We come now to the claim of overcharges for various kinds of insurance. The first item is a claimed overpayment of $113.13 on compensation insurance for the janitor of the building in question. This is obviously a just complaint since the evidence discloses without dispute that $113.13 was in excess of the actual cost of the insurance.

Next, defendant complains of an alleged overpayment of

$130.51 on boiler insurance, otherwise termed public liability insurance. His first theory is that the amount of insurance of this kind was fixed by the trust deed. This contention is without merit for two reasons: First, the trust deed did not require the trustee to provide boiler insurance, it required this of the first party who was Lake Deuel; and, second, the trust deed, as we have already pointed out, had no force and effect after January 16, 1936. We find actually that boiler insurance was carried under a blanket policy much in excess of the amount that defendant claims should have been carried, but was carried at a slightly lower rate than an individual policy could have been procured of the size and amount defendant contends for. This claim is without merit.

The next objection is to rent insurance in the amount of $12,000, with a premium thereon of $47.40. This was to guarantee rent in case of loss of rents occasioned by fire. Was this calculated to be beneficial to the trust? We are of the opinion that it was, on a property whose annual rental income amounted to approximately $14,000 a year, the loss of at least a part of which could be reasonably anticipated in case of fire in the building.

The next claim is that the trustee carried excessive fire and windstorm insurance, that is, that policies were carried for $75,000 whereas they should have been for $63,600, the amount of indebtedness against the trust estate. The claimed excess premium is $49. The basis of the claim is that the trust deed carried the provision that this type of insurance should equal the indebtedness. What we have said about the failure of application of trust deed to boiler insurance applies here. The record discloses further that the cost of the kind and amount of insurance procured was procured below the cost of straight fire and windstorm insurance without coinsurance for $63,600. Defendant cannot be heard to complain.

The next item is the payment of five premiums on fidelity bonds for Byron Reed Company, the rental and managing agent of the trust property for the trustee. The defendant

charges that this was unnecessary. It is urged on the other hand that this is a matter of good business judgment. We cannot say otherwise in view of the small charge of $30 a year to protect against possible defalcations running into thousands of dollars each year. He claims then that the actual cost of the bonds was $21 each instead of $30, the amount charged against the trust. The fact is that the premiums were $30 each, and $9 represented the commission of the agent. Byron Reed Company was the agent of the bonding company, hence only $21 was remitted to the company and the commission retained. We know of no rule of law which prevents this kind of practice.

The defendant contends that there was an overcharge on all insurance in the amount of $249.55. The insurance was procured by the Byron Reed Company, which company was, as has been said, the agent for the trustee and engaged in the writing of insurance. This amount of $249.55 appears to represent the agency commission, but was a part of the standard premium on such insurance. Nothing appears which justifies a holding that this represented an overcharge for insurance.

It appears that the trustee made distribution of net rentals semiannually. Instead of distributing all net rentals as they came in or at stated periods, the trustee retained a balance which varied at different times. The gross income from rentals was approximately $14,000 a year. The smallest amount withheld was $390.90, and the largest on any semiannual date was $2,285.56. However, on November 26, 1940, which was not a date for semiannual distribution there was a balance of $4,098.96. The defendant claims that interest at 6 per cent. should be charged against the trustee on these balances. In view of all of the facts and considering the trust, its character and operation, we can see nothing illegal and improper in holding a reasonably sufficient reserve on hand to meet possible contingencies and emergencies. The amounts withheld were not unreasonable.

There is another item of $150 which was the fee to the

receiver in the foreclosure action. This we may ignore entirely since it was allowed in that action. No discretion was lodged in the court in this action with reference to its allowance and approval.

The next and last complaint urged is that the trustee allowed one Burnadette Connelly, an employee of the trustee, to occupy an apartment in the building in question for 41 months, and to pay rent at $20 a month which was one-half of the regular rental rate for the apartment. That she did occupy the apartment at the rate mentioned is not denied, nor is it denied that this was one-half of the regular rate. The answer is that she was a resident agent with certain duties to perform with reference to showing tenants about and with reference to order in and orderliness of the apartment building. For the performance of these duties she obtained a reduction in rental on her apartment in the amount stated. The evidence indicates that this service was reasonably necessary and advisable, and that the compensation was not excessive for the service contemplated and performed.

Having discussed all of the objections of the defendant which were carried into his brief, by way of summary it is the finding of this court that the defendant is precluded from asserting any claim against or objection to the report and final disposition of the trust created by the trust deed and its supplement, which disposition was concluded on January 16, 1936.

We further find that the acts and doings of the trustee with relation to the trust which came into being by decree of the district court and was accepted by the holders of the land trust certificates were regular in all respects; that the final report of the trustee and the allowance of fees to the trustee and to its attorneys was reasonable and proper and properly approved and made by the district court, except as to an overcharge of $113.13 on premium for compensation insurance for the janitor of the apartment house which amount the trustee should be required to account to the defendant.

The decree of the district court is therefore affirmed except as to the item of $113.13. As to this item the case is reversed and remanded, with directions to the district court to enter judgment in favor of the defendant and against the plaintiff trustee.

AFFIRMED IN PART AND REVERSED IN PART,
WITH DIRECTIONS.