THEODORE M. HANSEN ET AL., APPELLEES, V. E. L. BRUCE CO., A CORPORATION, APPELLANT.

77 N. W. 2d 458

Filed June 8, 1956. No. 33931.

*Kennedy, Holland, DeLacy & Svoboda,* for appellant.

*Smith & Smith, for appellees.*

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The objective of this litigation is the recovery of damages from appellant on its written guaranty of the performance by Beal Terminix Company of the obligations of a contract executed by H. J. Erhorn and the Beal Terminix Company resulting from its failure to perform the contract as it is alleged by appellees who are assignees of H. J. Erhorn.

The substance of the petition is that:

H. J. Erhorn made a contract about May 22, 1945, with Lloyd A. Beal, doing business as Beal Terminix Company, for the insulation of a house located at 2615 North Forty-fifth Street, Omaha, Nebraska, against attack of subterranean termites. Appellant about June 13, 1945, by endorsement written on the contract guaranteed the fulfillment of it by Lloyd A. Beal. A copy of the contract and guaranty is made a part of and attached to the petition. Appellees purchased the house and the real estate on which it is located about May 28, 1947, from Erhorn and he, as a part of the transaction, orally assigned the insulation contract and the guaranty of appellant to appellees. Appellees performed the

obligations of the contract required of them and they continued the contract in force and effect to June 13, 1952. Beal made frequent and repeated applications of Terminix to the house pursuant to the contract during the period between May 28, 1947, and March 1952, but termites existed in the house during that period, continued to exist therein, and have during that time worked and continued to work in the house and its substance and strength have been injured. Beal has not satisfied the terms of the contract by him required to be performed. He did not and has not insulated the house against attack of subterranean termites. The additional applications of Terminix made by Beal as found necessary upon reinspection of the house did not and have not insulated the house against subterranean termites. The house, because of the foregoing matters, was damaged in a named amount for which judgment was asked.

The execution and delivery of the contract and guaranty and the fact that Beal made frequent and repeated applications of Terminix to the house at 2615 North Forty-fifth Street, Omaha, Nebraska, between May 28, 1947, and March 19, 1952, were admitted by the answer of appellant. Appellant therein alleged that the Terminix was applied to the house at various times between June 13, 1945, and March 19, 1952, in accordance with the requirements of the treating technique developed by E. L. Bruce Co., and that the contract was in all respects performed by Beal.

Appellant tested the sufficiency of the evidence to support a verdict for appellees at the close of the evidence by a motion for an instructed verdict for it. The motion was overruled. A verdict and judgment for appellees was the result of the trial of the case. Appellant by motion asked the court to disregard the verdict and render a judgment for it or, in the alternative, for a new trial. The requests were denied and this appeal was taken.

H. J. Erhorn, hereafter called Erhorn, was and had been for about 25 years engaged in selling real estate, building and selling new houses, and buying and remodeling older houses and selling them. He built the house concerned in this cause about 5 years before he sold it in May of 1947 to appellees. It will be referred to herein as the Hansen house. He had constructed two other houses at an earlier time before the Hansen house was built, one on either side of it. The two houses he first built at this location became infested with termites. He had trouble with them and he learned how to recognize the presence of termites. He made a study of subterranean termites. He read all the material he could secure on the subject including publications issued and distributed by the United States. Erhorn occupied the Hansen house as his home and sometime before May 22, 1945, he discovered there were termites in the house where a sill joined the top of a concrete block of the foundation and he also observed a yellow canal or tube at or near that location that had been constructed by termites as a passageway for them. It was made up the side of a basement window and extended about halfway along the north wall. He had been on the alert for the presence of termites because of the infestation in the other two houses.

He soon thereafter contacted the Beal Terminix Company, owned by Lloyd A. Beal and hereafter referred to as Beal, and "talked about treating them." When Erhorn first communicated with Beal he asked for an estimate of the cost of treating the house. Later Beal went to the Hansen house and talked with Mrs. Erhorn. Erhorn was not present. Mrs. Erhorn said she wanted an estimate of the cost of treating the house. Beal inspected the house and made a written report. He told Mrs. Erhorn of the termite infestation and the damage he found. She asked Beal to give her a price for treating the house. He made a computation and quoted her a figure. There was further conversation concerning the

repair of the damage. She said Erhorn was a contractor and he would do all the work except the treatment of the house. Beal used a printed form, filled in the blanks, signed it, and Mrs. Erhorn signed the name of her husband to it and indicated thereon that she had signed her husband's name for him. This is the contract on which this case is based. It is dated May 22, 1945, and its terms became effective June 13, 1945. Erhorn approved what his wife had done and said concerning it: "I made a contract with them (Beal) to treat the termites."

Soon after May 22, 1945, Beal, pursuant to the contract, applied Terminix to the house as provided and required by the treating technique developed by appellant. Erhorn said he was present at least a part of the time and that "it took about two days to treat the house." Beal visited the house later while Erhorn occupied and owned it for the purposes defined in and as performance of the contract. Erhorn said that after the treatment he made frequent check on the house, that he looked for termites, and that he was continuously alert as to the condition of the house until he sold it. Erhorn testified as a witness for appellees that he was satisfied with the way the contract was performed by Beal from the time it was made until the house was sold and conveyed to appellees.

Appellees bought the house from Erhorn May 28, 1947. They went through it and examined it probably three times before they bought it. They knew that the house had been infested with termites but appellees said Erhorn told them it had been treated and they thought it was a wise purchase because if it had been treated "there were precautionary methods taken against subterranean termites." They saw and carefully read the contract between Beal and Erhorn for the treatment of the house before the purchase of it was made and Erhorn told them the contract would go in with the sale of the house. The contract was surrendered to appellees

when the transaction for the purchase of the house was completed and it was conveyed to them. Appellees did not have an inspection of the house made for termites when they bought it, neither have they had an inspection or any treatment of the house since March 21, 1952. They paid the amounts required to keep the contract in effect from June 13, 1947, to June 12, 1952. It was terminated on the last date by appellees. Erhorn talked with appellees about termites during the negotiations for the sale of the house and he said he told them the whole story. He showed them the contract with Beal, told appellees the house had been treated for termites, and that he had a yearly contract for inspection and retreatment. He advised appellees to continue the inspection and treatment and he said the deal was made on that basis. He told them when he sold the house the contract would go along with the sale and when he closed the sale of the house to appellees he delivered the contract to them with the intention thereby to relinquish all his right, title, and interest in it.

Beal made on an average about 3 or 4 inspections of the house each year after the appellees purchased it, generally at their request, and on many occasions he applied Terminix to a part or parts of the house. This was done on occasions not because he found evidence of live termites but because it was requested by appellees. The last inspection was made by Beal March 21, 1952. The notice of appellees terminating the contract was dated June 10, 1952. There was no claim that Beal defaulted in the matter of inspection or in making additional applications of Terminix to the house after inspection when found necessary. There is no proof that Beal did not apply Terminix to the house in accordance with the treating technique developed by appellant. The evidence that he did so is not disputed. Appellees disclaim any communication with Beal or anyone representing him concerning the contract before they made and completed the transaction for the purchase of the

house.  The first contact they or either of them had with Beal or anyone employed by or acting for him was about a year after the purchase of the house.

The contract by virtue of which appellees claim the right to recover damages in this action is characterized in its caption as a Terminix service contract.  It relates that Beal Terminix Company is licensed under U. S. Letters Patents by E. L. Bruce Co., Memphis, Tenn., manufacturers of Terminix.  The relevant provisions of the contract are these:  "The Undersigned Terminix Licensee hereby contracts to insulate the building (or buildings) listed below, against the attack of subterranean termites, by applying Terminix in accordance with the requirements of the treating technique developed by E. L. Bruce Co., for the sum of:  Two Hundred Six and 20/100 Dollars * * * The Undersigned warrants that any additional applications of Terminix to insulate against the attack of subterranean termites, found necessary upon re-inspection, shall be performed at no additional cost.  This warranty is effective for one year from the date of the original insulation. * * * The Undersigned agrees to extend this warranty from year to year for the sum of $12.20, payable annually on or before each anniversary of the Contract.  The Purchaser reserves the right to terminate this agreement as of any anniversary date by giving advance written notice to the Undersigned; the Undersigned reserves the right to terminate this agreement as of the fifth or any later anniversary date. * * * The purchaser's guaranty copy of this contract will be executed and issued by E. L. Bruce Co. upon receipt of notice from the Undersigned Licensee that the contract price has been paid in full."  The guaranty on which this action is founded, omitting the signature and provisions unimportant to this case, is as follows:  "E. L. Bruce Co. hereby guarantees fulfillment of the terms of this contract by its Licensee * * *."

If the contract is not burdened with ambiguity, if

it was not inspired by fraud, or if it was not induced by mutual mistake, what the contract made by Erhorn and Beal was must be decided by the language of the instrument which evidences it. There is no claim of fraud, mistake, or ambiguity. Appellees say the contract is clear and a contract written in clear and unambiguous language is not subject to interpretation. This may be accepted as an area of agreement. In the recent case of Barkalow Bros. Co. v. English, 159 Neb. 407, 67 N. W. 2d 336, the long-established doctrine of this court was reiterated and applied: "In the absence of fraud, mistake, or ambiguity a written agreement is not only the best evidence but the only competent evidence as to what is the contract of the parties." See, also, Frentzel v. Siebrandt, 161 Neb. 505, 73 N. W. 2d 652. The contract must be interpreted as any other written agreement in accordance with its general scope, its design, and the intention of the parties at the time it was made as described by the whole instrument. In Mutual Benefit Health & Accident Assn. v. Milder, 152 Neb. 519, 41 N. W. 2d 780, it is said: "The entire contract must be regarded with a conscious effort to give effect to every part of it without disproportionate emphasis upon one to the neglect of other provisions."

The hypothesis of appellees is that Beal contracted unqualifiedly to insulate the Hansen house against attack of subterranean termites and that appellant guaranteed that Beal would in any event perform that obligation. Appellees make this clear beyond doubt by their emphasized statements that Beal agreed to insulate against attack of termites; that the contract is clear and there is no need for interpretation; that the key word in the contract is "insulate"; that it has a definite meaning in the law—to isolate so as to have no dependence or association with surrounding objects; and that therefore the contract was that Beal would detach and isolate the house from this "assailing" or "setting to work upon" by termites.

Appellees assert the foundation for their case by separating from their context, quoting, and emphasizing the words "insulate against the attack of subterranean termites." This is not a fair statement or deduction. The contract is that Beal "contracts to insulate the building * * * against the attack of subterranean termites, by applying Terminix in accordance with the requirements of the treating technique developed by E. L. Bruce Co." The word "insulate" therein is modified, restricted, and defined by the language of the contract. The words following insulate, "by applying Terminix in accordance with the requirements of the treatment technique developed by E. L. Bruce Co.", determine the meaning in which the word "insulate" is employed therein and establish the manner and extent of the insulation intended and expressed by the contract. The meaning of a word of a contract may not be decided by undue emphasis of it and the disregard of other qualifying and limiting terms of the contract. The obligation of Beal in this regard was to insulate against attack by subterranean termites upon the house by applying Terminix in accordance with the requirements of the treating technique developed by E. L. Bruce Co.

The trial court charged the jury that the word "insulate" means to make an island of, to isolate, to place in a detached situation or in a state of isolation and that it was for the jury to say whether or not a reasonably prudent person in the situation of appellees would take the word "insulate" as used in the contract to mean to place in such a state as to isolate subterranean termites from appellees' house and to prevent such termites from entering the house. The court also instructed the jury that if appellees had established by a preponderance of the evidence that Beal failed to insulate the house as that term was defined in the charge and that because thereof the house was damaged, the appellees were entitled to a verdict for the damages. The trial court entirely eliminated from the case the

words of the contract which modified, restricted, and defined the word "insulate" as used in the contract. This was error and it was prejudicial. The record establishes that Beal made inspections and all applications of Terminix to the house at the times and in the manner his contract required.

The parties to the contract were Beal and Erhorn. Erhorn assigned it to appellees. They acquired only the rights their assignor had. Appellees as assignees are in no better position in this litigation than Erhorn would have occupied if he had not assigned the contract and was a litigant in the case. Anything that was done, said, or concluded by appellees or Erhorn in their negotiations or transaction involving the contract is unimportant in this case. The mere assignment of a contract or a right resulting from it does not create a contractual obligation between the assignee and the other party to the contract. Such an assignment does not affect or change any of the provisions of the contract. If the assignor could not have maintained an action based on the contract, neither can the assignee. Babson v. Village of Ulysses, 155 Neb. 492, 52 N. W. 2d 320; Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757; United States Nat. Bank v. Alexander, 140 Neb. 784, 1 N. W. 2d 920; 4 Am. Jur., Assignments, § 95, p. 304; 6 C. J. S., Assignments, § 99, p. 1155.

It is immaterial in this litigation what the views of appellees were as to the meaning or effect of the contract. The controlling consideration is the contract Erhorn made with Beal. At the trial appellees were each permitted, over proper objections of appellant, to testify what the word "insulate" as it appeared in the contract meant to them when they bought the house May 28, 1947. The district court explained the ruling admitting the evidence by saying: "* * * I think * * * whatever his (plaintiff's) interpretation of the word 'insulate' might mean to him would be the interpretation that is intended by the one who drew the contract." This con-

clusion was incorrect and the admission of the testimony was prejudicially erroneous. Erhorn testified at the instance of appellees. He made no claim that the contract did not express the exact agreements he made with Beal. He made no appeal to the doctrine that when the terms of an agreement have been intended in a different sense by a party to it, that sense is to prevail against the other party in which he had reason to suppose the former understood it. § 25-1217, R. R. S. 1943. Erhorn said he made a contract to have the house treated for termites. Beal inspected it and treated it in accordance with the contract. They continued under the contract for 2 years. Erhorn said he was satisfied with what Beal had done. The record fully justifies the conclusion that the contract was intended by the parties to it to be exactly what the caption says it is— a service contract requiring Beal to apply Terminix to the house in the mode developed by appellant, to continue as specified in the contract to inspect the house, and when and where necessary to apply additional Terminix to it during the life of the contract. The motion of appellant for judgment notwithstanding the verdict should have been sustained.

The judgment should be and it is reversed and the cause is remanded with directions to the district court for Douglas County to sustain the motion of appellant for a judgment notwithstanding the verdict and to render a judgment of dismissal of the cause.

REVERSED AND REMANDED WITH DIRECTIONS.