JAMES COSGROVE AND ANN COSGROVE, APPELLEES, V. MADEMOISELLE FASHIONS, AN ARKANSAS CORPORATION, APPELLANT.
292 N. W. 2d 780

Filed May 20, 1980. No. 42711.

Carlos E. Schaper, for appellant.

Gary G. Washburn of Stumpff & Washburn, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

This is an appeal from an order of the District Court for Custer County, Nebraska, which affirmed a judgment entered by the county court of Custer County, in a law action, ordering the return of a deposit made on a purchase contract to James and Ann Cosgrove. We reverse and remand.

It appears from the record that on March 17, 1977, Ann Cosgrove contacted John M. Maple, a representative of defendant, with reference to furnishing expertise, inventory, and supplies to establish a jeans store in the Broken Bow area. Maple was a broker for Mademoiselle Fashions, an Arkansas corporation. One of his duties was to explain to prospective

purchasers the program Mademoiselle had for aiding persons to establish businesses in the field of women's fashion. Following this initial contact, Mrs. Cosgrove requested Maple to visit Broken Bow so that she might establish such a business by the use of Mademoiselle's program. Maple did so, arriving in Broken Bow on June 30, 1977. Mrs. Cosgrove went with Maple to the proposed site of the business venture. At that time, Maple was made aware of a zoning problem at the site. Thereafter, they had a meeting with Carl Norden, the bank officer in Broken Bow through whom financing was being arranged. Such financing was to be by a loan approved by the Small Business Administration. Maple received assurances that financing could be quickly arranged, with little or no problems. Mrs. Cosgrove and Maple then went to her husband's, James Cosgrove's, office where the Cosgroves and Maple signed an instrument captioned "Purchase Order," whereby the Cosgroves agreed to purchase a certain starter package from Mademoiselle for a total purchase price of $13,500.

Since the zoning and financing matters were still unresolved, the "Purchase Order" was not dated at that time; likewise, a portion of the agreement which represented the amount of partial payment submitted at the inception of the contract was left blank. A provision of the "Purchase Order" stated:

This order is NOT subject to cancellation. If less than full payment of the total amount (purchase price) is made herewith, and if purchaser subsequently fails to pay any balance when due (by post marked date), then the amount paid with this Purchase Order may be retained by Mademoiselle and credited to any damages sustained by it by reason of such failure to pay.

Mr. and Mrs. Cosgrove both admitted knowledge of this provision at the time they signed the agreement.

It was agreed that the Cosgroves were to submit the partial payment to Maple when the problems had been resolved, at which time he would date the "Purchase Order," fill in the blank with the amount of partial payment, and transmit the agreement to Mademoiselle for its acceptance.

On or about August 1, 1977, Mrs. Cosgrove submitted a check to Maple in the amount of $2,000 as partial payment on the contract. However, her SBA loan was later disapproved. She thereafter contacted Maple requesting the return of the partial payment, which request was denied, and this action followed.

At trial to the county court, the foregoing sequence of events was related. The record reveals that the Cosgroves further testified that Maple had told them that a partial payment made by another party to Mademoiselle under similar circumstances had been refunded. Maple, on the other hand, testified that he had no knowledge of the return of the partial payment to another party in a different transaction until some time after Mrs. Cosgrove requested the return of her partial payment. Moreover, he testified that he had offered to insert a provision in the "Purchase Order" permitting the return of the partial payment should the zoning problem not be favorably resolved, which offer was refused by the Cosgroves. At no time, however, did Maple make a similar offer with regard to the financing problems. Finally, Norden testified, over objection, that he received the "impression" the partial payment would be returned should financing fail to be obtained, although he could not state whether that assurance had come from Mrs. Cosgrove or Maple. On the basis of the foregoing evidence, the county court found that Mademoiselle was, at the time of the execution of the purchase agreement, aware, through the knowledge of its agent, Maple, that performance of the agreement was impossible without SBA-ap-

proved financing. The court further found that procurement of SBA financing was a condition precedent to the purchase agreement, which condition was never satisfied. The purchase agreement was therefore found to be unenforceable and the Cosgroves granted a judgment against Mademoiselle in the amount of the partial payment, $2,000, and costs of $21.

Mademoiselle appealed to the District Court, which found that the procurement of SBA financing was a condition precedent to the purchase agreement and that failure to obtain SBA financing was not attributable to the fault of the Cosgroves. The District Court affirmed the judgment of the county court. Mademoiselle has appealed to this court, assigning several errors to the proceedings below.

Mademoiselle contends, first, that the parol evidence rule operates to preclude the admission of evidence which tends to vary the provision of the "Purchase Order" earlier set forth. However, we believe that the first question which must be decided herein is whether a contract existed.

It is well settled that the parol evidence rule does not prevent a party from using contemporaneous or prior negotiations or expressions to show that the writing was never intended to be operative or that it was intended to be effective only upon the happening of a condition precedent, provided that the condition sought to be proved is not inconsistent with a specific term of the writing.

Calamari and Perillo, Contracts 111-12 (2d ed. 1977).

When parties, without any *fraud* or *mistake,* have deliberately put their engagements in writing, the law declares the writing to be not only the *best*, but the *only evidence* of the agreement; but this does not prevent parties to a written agreement from proving

that, either contemporaneously or as a preliminary measure, they had entered into a distinct oral agreement on some collateral matter, or an oral agreement which constitues a condition on which the performance of the written agreement is to depend.

*Norman v. Waite,* 30 Neb. 302, 316, 46 N.W. 639, 643 (1890), quoting from *Michels v. Olmstead,* 14 F. 219 (8th Cir. 1882) (emphasis added in *Norman*).

We do not believe that the procurement of SBA-approved financing was a condition upon which the performance of the "Purchase Order" was dependent. "A condition is an event, not certain to occur, which must occur, unless excused, before performance under a contract becomes due." Restatement (Second) of Contracts, § 250 (Tent. Draft No. 7, 1972). Mrs. Cosgrove contended below, and the trial court found, that the procurement of SBA financing had to occur before the "Purchase Order" could become effective and binding on the parties.

The agreement, by its plain terms, became effective on final acceptance by Mademoiselle. Although she did not plead it in her petition, Mrs. Cosgrove argues that the agreement was varied by the actions of Maple and herself to the effect that the procurement of financing was a condition precedent to the agreement's becoming effective.

We believe that the actions of the parties to the agreement did not vary any of the terms of that instrument. By Mr. Cosgrove's own testimony, the Cosgroves decided not to enter into the agreement on June 30, 1977, "because there was [sic] too many circumstances unresolved yet." Moreover, the Cosgroves were given the option of inserting a condition to the formation of the contract with regard to the zoning problem, which option was rejected. Finally, Maple testified that the Cosgroves were to transmit the partial payment to him when the problems with zoning and financing were resolved. The record is

clear that the Cosgroves submitted the partial payment, Mademoiselle accepted such payment, and the "Purchase Order" became a binding contract at that time. More importantly, even assuming *arguendo* that the obtaining of financing by the Cosgroves was a condition precedent to the formation of the contract, it seems clear that the actions of the Cosgroves, described above, in sending in their downpayment to Maple after their previous discussion with reference to the necessity of obtaining an SBA loan, and prior to being informed whether such loan would be granted, would amount to a waiver of that condition. If the obtaining of the SBA loan was of such importance to the Cosgroves at that time that they would not have entered into the contract without knowledge that the loan had been obtained, they would not have sent in their partial payment to Maple without ascertaining what the facts were with reference to such loan. By so doing, they removed any obstacle to the formation of the contract based upon the necessity of obtaining the loan.

From the foregoing, we conclude that the contract came into existence upon Mademoiselle's acceptance. The admission of parol evidence for the purpose of varying the terms of the agreement was error.

> The parole evidence rule is well analyzed in 3 Corbin on Contracts, c. 26, §§ 573-596, p. 356 et seq. That work states the rule in substance to be: "When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." § 573, p. 357.
>
> . . . .

A written contract expressed by clear and unambiguous language is ordinarily not subject to interpretation or construction. Hansen v. E. L. Bruce, Co., 162 Neb. 759, 77 N.W.2d 458.

*Ely Constr. Co. v. S & S Corp.,* 184 Neb. 59, 65-66, 165 N.W.2d 562, 566-67 (1969). See, also, *Voss v. Linn,* 171 Neb. 32, 105 N.W.2d 383 (1960); *Security Savings Bank v. Rhodes,* 107 Neb. 223, 185 N.W. 421 (1921).

It appears to be the general rule that, even though parol evidence is admissible to show conditions precedent which relate to the delivery or taking effect of a written instrument, if the condition precedent is inconsistent with, or contradictory to, the written instrument, parol evidence thereof is not admissible. 30 Am. Jur. 2d *Evidence* § 1038 (1967); 32A C.J.S. *Evidence,* § 935 (1964). See, also, *Meadow Brook Nat. Bank v. Bzura,* 20 App. Div. 2d 287, 246 N.Y.S.2d 787 (1964). In this case, the contract signed by the parties specifically provided: "This order is NOT subject to cancellation." Even if we were to find in this case that the contract was subject to a condition that the purchasers obtain an SBA loan, such condition, we believe, would be inconsistent with, or contradictory to, the provision against cancellation in the contract; and hence, under the rules above cited, parol evidence would not be admissible to show the condition.

In this case, the "Purchase Order" was clear and unambiguous in its terms. Mademoiselle was entitled to retain the partial payment should the Cosgroves fail to live up to the terms of the contract. We conclude the trial court was wrong in ordering a return of the partial payment to the Cosgroves and we, therefore, reverse and remand this matter with directions to enter a judgment in favor of Mademoiselle.

REVERSED AND REMANDED WITH DIRECTIONS.

McCown, J., concurring in result.

In this case, the plaintiffs failed to plead or prove that the parties had agreed orally that performance of the contract was subject to the happening of a stated condition. In any event, under the evidence in the record at the time the plaintiffs submitted the check to the defendant's agent, John M. Maple, on August 1, 1977, the contract was completely integrated.

I am concerned, however, with the holding of the majority opinion that if an oral condition precedent is inconsistent with or contradictory to the written instrument, parol evidence thereof is not admissible. That holding runs counter to the modern position reflected in Restatement (Second) of Contracts § 243 (Tent. Draft No. 6, 1971), which states:

§ 243 INTEGRATED AGREEMENT SUBJECT TO ORAL CONDITION.

Where the parties to a written agreement agree orally that performance of the agreement is subject to the happening of a stated condition, the agreement is not integrated with respect to the oral condition.

Comment b to that section states:

b. *Condition inconsistent with a written term.* The rule of this Section may be regarded as a particular application of the rule of Section 242(2) (b), giving effect to consistent additional terms omitted naturally from a writing. So regarded, it has sometimes been limited to conditions consistent with the written terms. But an oral condition is never completely consistent with a signed written agreement which is complete on its face; in such cases evidence of the oral condition bears directly on the issues whether the writing was adopted as an integrated agreement and if so whether the agreement was completely integrated or

partially integrated. Inconsistency is merely one factor in the preliminary determination of those issues. If the parties orally agree that performance of the written agreement was subject to a condition, either the writing is not an integrated agreement or the agreement is only partially integrated until the condition is met. Even a "merger" clause in the writing, explicitly negating oral terms, does not control the question whether there is an integrated agreement or the scope of the writing.

BOSLAUGH, J., joins in this concurrence.

CLINTON, J., concurring in the result.

I concur in the result. The principle set forth and discussed in the second to last paragraph of the majority opinion governs the result in this case. If a contract is to be subject to a condition precedent, it is a simple matter to so state in the contract or in a separate contemporaneous instrument and to leave out any conflicting requirement.

This is an action at law and such cases are not tried de novo in this court.